# FEBRUARY, 1918

ROBERT MAUD, TAX COLLECTOR, v. H. B. TERRELL, COMPTROLLER.

No. 3035. Decided February 6, 1918.

**1.—Constitutional Law—County Attorney—Right to Represent State.**

The powers conferred by the Constitution (art. 5, sec. 21) upon county or district attorneys and upon the Attorney General (art. 4, sec. 22) to represent the State, in the one case in the district and inferior courts, and, in the other, in the Supreme Court, can not be devolved by the Legislature upon others, nor can it interfere with their rights to exercise them. It may provide assistance for them in the exercise of their duties, but, since their powers are exclusive in .nature, it can not compel such officers to accept that assistance, and, if availed of, such assistance is to be rendered in subordination to their authority. (P. 99.)

**2.—Constitutional Law—Statutes—Construction.**

Rules observed by courts in determining the validity of a statute stated: an Act of the Legislature is not to be declared unconstitutional unless plainly so; an intention to observe, rather than to violate the Constitution is presumed; where the language is unambiguous and the conflict with the Constitution apparent, there is no alternative but to declare the enactment void, and words can not be read into the statute or out of it to save it; but where the language is of doubtful meaning, reasonably susceptible of different constructions, rendering the Act valid under one construction, and invalid under the

other, the construction which sustains it will be adopted; where the terms used are general, reasonably admitting of construction which does not condemn it, though literally susceptible of a broader meaning, it will be restrained in its operation so as to harmonize the statute with the Constitution. (Pp. 99, 100.)

### 3.—Inheritance Tax—County Attorney—Contract by Comptroller.

Chapter 10, of title 126, Revised Statutes (amendment by Acts of 35th Leg., ch. 166, Gen. Laws, 1917, p. 377), left unchanged article 7490, relating to the powers of county attorneys to sue for inheritance taxes, but changed article 7491, relating to their duty to report to the county judge estates subject to the tax and their compensation therefor by transferring that duty to a person to be employed by the Comptroller. This did not interfere with the constitutional right of the county attorney to represent the State in proceedings to enforce collection of same. The provision in the Act that the person so appointed by the Comptroller "may represent the State in any proceeding . . . necessary to enforce the collection" is not to be construed as dispossessing the county attorney of his right to control the action; the duties in respect to such suits of the person so employed, not necessarily a licensed attorney, are to be exercised in subordination to the right of the county attorney to institute and conduct the action. (Pp. 100-103.)

### 4.—Case Stated.

The Comptroller having, by authority of article 7491, Rev. Stats., contracted with H. to look after and collect inheritance taxes, the latter reported to the county judge certain taxes due, and thereby payment of same to M., the county tax collector, was secured without suit therefor. M., who had paid H. from the amount so collected the commission allowed him by the law for his services in securing the payment, was refused credit therefor in his settlement with the Comptroller, on the ground that the law providing for such employment and compensation was invalid because interfering with the duty of the county attorney under the Constitution to perform the same service. M. applied to the Supreme Court for mandamus to require the Comptroller to allow him the disputed credit. Held, that the law in question was not unconstitutional; that M. was entitled to the credit claimed, and that mandamus should be awarded. (Pp. 98-103.)

Original application to the Supreme Court by Maud, tax collector, for writ of mandamus against Terrell, State Comptroller. R. B. Humphrey intervened in his own interest seeking the same relief.

*N. A. Rector* and *Lightfoot, Brady & Robertson,* for relator, and *Charles L. Black,* for intervener.

*B. F. Looney,* Attorney General, and *G. B. Smedley,* Assistant, for respondent.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

The right of the relator to the mandamus here sought against the Comptroller depends upon the validity of the Act of the Thirty-fifth Legislature, chapter 166, amending article 7491 of the Revised Statutes so as to authorize,—its title states,—"the Comptroller to appoint and contract with persons to collect inheritance taxes."

It appears that as authorized by the Act the Comptroller, substantially in its terms, has entered into a contract with R. B. Humphrey whereby, for the maximum compensation allowed, his services have been

engaged for the doing of those things in this relation which the Act provides. Through his offices a certain collection of such taxes has been made in Travis County. Out of the taxes collected the relator has paid him his commission therefor, but the Comptroller, on the advice of the Attorney General, refuses to credit the relator's account with the amount so paid. If the Act is valid, the relator is entitled to the credit. If it is invalid, the credit was properly refused, since in that event the Comptroller's contract with Humphrey is of no force and the latter was not entitled to the commission.

The validity of the Act is challenged upon the ground that its necessary effect is to substitute the person or persons whom the Comptroller may thus employ for the county attorneys of the State in the prosecution of suits by the State for such taxes in the district and inferior courts; and for the Attorney General in their prosecution in the Supreme Court, supplanting them in the discharge of their constitutional duties and denying their right to perform them. This position has been very strongly presented by the able Assistant Attorney General, Mr. Smedley, who appears for the respondent.

If such is the necessary effect of the Act and its provisions in respect to the functions of the person or persons whom the Comptroller is authorized to engage for the services named are not separable, it is condemned by the Constitution. That instrument, by section 21 of article 5, lodges with the county attorneys the duty of representing the State in all cases in the District and inferior courts, with the right in the Legislature to regulate by law the respective duties of district and county attorneys where a county is included in a district having a district attorney; and by section 22 of article 4 that duty as to suits and pleas in the Supreme Court is confided to the Attorney General. With the limitation existing in the authority of the Legislature, under section 22 of article 4, to create additional causes of action in favor of the State and entrust their prosecution, whether in the trial or in the appellate courts, solely to the Attorney General, the powers thus conferred by the Constitution upon these officials are exclusive. The Legislature can not devolve them upon others. Nor can it interfere with the right to exercise them. Brady v. Brooks, 99 Texas, 366; Harris County v. Stewart, 91 Texas, 133; State v. International & G. N. R. R. Co., 89 Texas, 562. It may provide assistance for the proper discharge by these officials of their duties, but since in the matter of prosecuting the pleas of the State in the courts the powers reposed in them are exclusive in their nature, it can not, for the performance of that function, obtrude other persons upon them and compel the acceptance of their services. Wherever provision is made for the services of other persons for this express purpose, it is the constitutional right of the Attorney General and the county and district attorneys to decline them or not at their discretion, and, if availed of, the services are to be rendered in subordination to their authority.

An Act of the Legislature is not to be declared unconstitutional

unless plainly so. The presumption is that the Legislature acted in the light of the Constitution, with the intention to observe it rather than violate it. Where the language of the particular enactment is unambiguous and the conflict with the Constitution is hence apparent, there is no alternative but to declare the enactment void. In such cases words can not be read into a statute or out of it to save it. But where the language is of doubtful meaning, reasonably susceptible of different constructions, rendering the Act valid if construed in one sense and invalid if construed in another, that construction will be adopted which sustains the Act rather than destroys it. Likewise, where the terms used in a statute are general, reasonably admitting of a construction which does not condemn it, the language will be restrained in its operation so as to harmonize the statute with the Constitution, though, literally, it be susceptible of a broader meaning which would conflict with the Constitution. These are just and wise rules. They are of general application. They exist because courts are not to sit as severe and anxious critics of legislative expression, or as censors of the form in which statutes are written. It is the duty of courts to see that the Constitution is observed in the enactment of laws, and to fearlessly declare a law void which violates the Constitution. But these rules are for their guidance as an injunction that the language used in the writing of statutes is not always precise; that frequently terms of doubtful meaning are employed; that where this is true and the terms used reasonably admit of it, that construction is to be applied which will uphold the law; and that it is only where the language plainly contravenes the Constitution are they warranted in holding a law invalid.

The test, therefore, to be used in determining the validity of this Act is simply whether by plain and unambiguous language it deprives the county attorneys and the Attorney General of their authority to prosecute in the courts suits by the State for the recovery of inheritance taxes.

The statutes in relation to inheritance taxes, their collection, etc., constitute chapter 10 of title 126 of the Revised Statutes, being articles 7487 to 7502, inclusive. This Act, as stated, amends only one article of the chapter. The only reference to county attorneys in the original law was in articles 7490 and 7491. The former, which is left unamended, provides for the bringing of suit by the district or county attorney for a penalty in behalf of the State against any executor, administrator or trustee refusing or neglecting to comply with the article. The latter, before its amendment, in nowise related to the power of a county attorney to sue in the courts in behalf of the State for the taxes, but defined it to be his duty to report to the county judge estates subject to the tax, for which it was provided he should receive a stipulated compensation. By the present Act that duty is transferred to the person the Comptroller is authorized to employ. In other words, the only provision in the law relating to the prosecution of suits for the State by the county attorneys is left untouched by the Act, and the

only duty expressly conferred upon them by the original law of which the Act relieves them is one which does not involve the prosecution of suits. Attention is directed to this as reflecting whether it was the purpose of the Legislature, when it came to amend this one article of the original chapter,—an article not dealing in any sense with the subject of the rights or duties of county attorneys in respect to the recovery of the taxes in the courts,—to interfere with their authority to appear for the State in all suits necessary to enforce the law. It is not to be ignored in searching for the intent of the Legislature in its passage of the Act. It indicates that such was not the Legislature's purpose.

The Act in three different places refers to the duties of the person with whom the Comptroller is authorized to contract for the collection of the taxes. After the introductory part its opening sentence is:

"The Comptroller of Public Accounts of the State of Texas is hereby authorized and empowered, and it is made his duty to appoint and contract with some suitable person or persons whose duty it shall be to look specially after, sue for and collect the taxes provided by this chapter; such person in no event to receive under such contract more than ten (10) per cent of the amount of such taxes collected hereunder, as compensation."

Following this is the provision as to his reporting to the county judge estates subject to the tax. After the clause authorizing the payment of his compensation is this provision:

"It shall be the further duty of such person to aid in every possible way in the collection of such taxes."

At another place it is said:

"The person appointed by the said Comptroller may represent the State in any proceeding necessary under the provisions of this chapter to enforce the collection of such taxes but without other compensation than as provided in his original employment."

These provisions do not unequivocally supplant the county attorneys and the Attorney General in their authority to prosecute the suits of the State for the recovery of the taxes. These officers are not to be held as dispossessed of that authority by the Act unless by language to be found in the Act it is given to the Comptroller's appointee plainly to their exclusion. There is no language in the Act which certainly has that effect. The first provision quoted, with reference to its being the duty of the person employed by the Comptroller "to look specially after, sue for and collect the taxes" may be said, literally, to empower such person to institute suits, but it does not exclude the idea that this shall be in subordination to the authority of the county attorney. There is nothing in the language indicative of an intention to confer upon such person an exclusive power. If not, it will be presumed that the Legislature intended he should act in that relation under the authority of the county attorney and in such way as not to infringe upon the latter's powers, and the language will be so construed. It is not unreasonable to ascribe to the Legislature the view that the county attor-

neys of the State, with their important general duties demanding efficient discharge, would not hesitate to avail themselves of the services of an assistant thus provided for the special purpose of enforcing the collection of these particular taxes, or to suppose it was upon such assumption that this duty was defined.

In an effort to surely ascertain the sense in which the Legislature used the term, "sue for," in this provision, it should be noted that in article 7497 of the same chapter it is declared that if the tax is not paid to the tax collector within six months after the county judge has notified him of the amount, "the collector shall commence an action to recover the amount of such tax." Upon its face this language would authorize the collector to file the suit, but it can not be assumed that the Legislature so intended. It plainly means that he should cause the suit to be filed by the official charged by law with that specific duty. There is not much difference, as was suggested in the argument, between declaring it a duty "to commence an action for taxes" and "to sue for taxes." If the former expression in the connection in which it is used is susceptible of the meaning, as it clearly is, that the person to whom the duty is confided shall merely cause the suit to be brought, the latter, used in a similar connection and found in the same chapter, is equally open to the same construction.

It is to be here observed that the Act does not require that the person employed by the Comptroller shall be a licensed attorney, and from aught that appears in the Act he might be no more competent to institute a suit in the courts than would be a county tax collector.

Likewise, the provision that the person appointed by the Comptroller may represent the State in any proceeding necessary under the provisions of the chapter to enforce the collection of the taxes does not deny to county attorneys or the Attorney General the right to conduct suits for the taxes. To say that such person *may* so represent the State is not equivalent to a declaration that it shall be to their exclusion. The language is not mandatory; it is only permissive.

The Act does not impress us as aimed at the authority of county attorneys and the Attorney General in respect to the prosecution of the suits of the State for the taxes. Its prime concern was simply the employment of some person who would render diligent aid in their collection. The character expressly given by the Act to the person thus employed is that of an assistant for this purpose to the duly constituted public officials. It speaks of him as one "appointed and employed *to assist* in the enforcement of this law." Depriving county attorneys or the Attorney General of their constitutional authority was in our opinion foreign to its design. It undeniably is open to the construction that the person employed pursuant to its provisions may assist in the prosecution of suits for the taxes, but it can not be said to require a construction that his action in this regard shall serve to displace those officials in the exercise of their constitutional powers.

With this true, the Act can not be pronounced invalid. For unless

-those officers are by the Act supplanted in this authority, it must be
assumed that the Legislature intended they should be free to exert it
as aforetime.   If their authority was to be left unimpaired, it must
further have been intended that the services of this assistant in this
relation provided for by the Act should be in subordination to it and
not in anywise interfere with its due exercise.   The provisions referred
to are, therefore, to be so construed.

It follows that the relator is entitled to the mandamus as prayed for,
and the writ will accordingly issue.

*Mandamus awarded.*