## AMERICAN LIBERTY PIPE LINE CO. v. AGEY.

### No. 9118.

Court of Civil Appeals of Texas. Austin.

Dec. 16, 1942.

Rehearing Denied Jan. 13, 1943.

Verne H. Maxwell, of Dallas, D. D. Mahon, of Lubbock, and Dan Moody, of Austin, for appellant.

John W. Stayton, of Austin, for appellee.

McCLENDON, Chief Justice.

Suit by Agey in his own behalf and on behalf of the State against American (American Liberty Pipe Line Company) as a common purchaser of crude oil under Sec. 8, Art. 6049a, Vernon's Ann.Civ. St. to recover penalties under Sec. 11 of said Article for alleged discrimination against Agey in refusing to purchase oil produced by him in the East Texas Oil Field. American plead in abatement urging that Agey could not lawfully institute and prosecute the suit on behalf of the State. The plea was overruled and upon trial to a jury upon special issues judgment was rendered against American in favor of Agey "on his own behalf and on behalf of the State of Texas" (½ on behalf of each) for $5,800, being the minimum penalty of $100 per day for 58 days. American has appealed.

Since we are sustaining American's plea that Agey could not lawfully maintain the suit, it will not be necessary to consider the other assigned errors.

Art. 6049a, Sec. 11, reads: "For the violation of any provision of this Act, or for the violation of any valid rule or regulation promulgated hereunder or any order passed by the Railroad Commission in pursuance of any such provision, rule or regulation, such person, association of persons, or corporation shall be subject to a penalty of not less than One Hundred Dollars ($100.00) nor more than One Thousand Dollars ($1,000.00) for each offense recoverable in the name of the State in any District Court in Travis County, Texas, and each day of such violation shall constitute a separate offense. One half of such penalty may be recovered by and for the use of any person, association of persons or corporation against whom there shall have been an unlawful discrimination as herein defined, such suit to be brought in the name of and for the use of the party or parties aggrieved."

American's contention is predicated upon Art. IV, Sec. 22, and Art. V, Sec. 21, of our State Constitution, Vernon's Ann.St., relating to the powers and duties of the Attorney General and county attorneys. Art. IV, Sec. 22, reads: "The Attorney General shall hold his office for two years and until his successor is duly qualified. He shall represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party, and shall especially inquire into the charter rights of all private corporations, and, from time to time, in the name of the State, take such action in the courts as may be proper and necessary to prevent any private corporation from exercising any power or demanding or collecting any species of taxes, tolls, freight or wharfage, not authorized by law. He shall, whenever sufficient cause exists, seek a judicial forfeiture of such charters, unless otherwise expressly directed by law, and give legal advice in writing to the Governor and other executive officers, when requested by them, and perform such other duties as may be required by law. He shall reside at the seat of Government during his continuance in office. He shall receive for his services an annual salary of two thousand dollars, and no more, besides such fees as may be prescribed by law; provided, that the fees which he may receive shall not amount to more than two thousand dollars annually."

The pertinent portion of Art. V, Sec. 21, reads: " * * * The county attorneys shall represent the State in all cases in the District and inferior courts in their respective counties; but, if any county shall be included in a district in which there shall be a district attorney, the respective duties of district attorneys and county attorneys shall in such counties be regulated by the Legislature."

The contention (which we sustain) is that Art. 6049a, Sec. 11, provides for an action in the name of the State in the recovery in which the aggrieved party may share to the extent of one-half; that such action must be brought by the Attorney General or county attorney; and that to construe the section as authorizing institution and prosecution of the suit by and in the name of the aggrieved party for his own use and that of the State would render it void, to that extent, as contravening the above constitutional provisions.

Agey asserts that the action created by the section is the well established common law qui tam action in which the prescribed penalty is given in part to the prosecutor and the remainder to the sovereign; which action is maintainable by the prosecutor for his own use and for that of the sovereign; qui tam actions being "well known to the jurisprudence of this State"; citing Bush v. Republic of Texas, 1 Tex. 455; Doss v. State, 6 Tex. 433; Tarde v. Benseman, 31 Tex. 277; State v. Garcia, 38 Tex. 543; Rawlings v. State, 39 Tex. 200.

He contends that Sec. 11 authorized the suit as brought; and that the invoked constitutional provisions were not infringed because the section "properly construed, does not deny the right of the state officers named to take complete charge of any suit filed by an aggrieved party to recover penalties on his own behalf and on behalf of the State of Texas"; citing Van Camp v. Gulf P. Co., 122 Tex. 383, 61 S.W.2d 773, and Maud v. Terrell, 109 Tex. 97, 200 S.W. 375. The record showing in this connection is contained in the following statement of Agey's counsel: "After the suit was filed, I took my file that covered the suit up to Mr. Jim Hart, the Assistant Attorney General, and turned the file over to him, and asked him what he wanted to do about it. He said to leave the file with him, he would let me know later; and they held the file some time, and he finally sent the file back and said he didn't think their Department wanted to take any action in the matter."

The cited cases involving qui tam actions arose under constitutions prior to

582

1876, which did not contain the invoked provisions, and therefore the question here presented was not there in issue. However, we think some of these cases are to some extent analogous. In State v. Garcia, 38 Tex. 543, 548 (followed in Rawlings v. State, 39 Tex. 200), which related to an act providing for a fine for the unlawful purchase of hides and also providing that "one-half of the fine shall be paid to the informer, and the other half shall be paid into the county treasury," although the act was held to create a criminal offense and was an amendment to the criminal code, nevertheless it was held that an indictment would not lie but the proceeding should be on the relation of the informer. These decisions were by the reconstruction court, and in Gibbs v. State, 39 Tex.Cr.R. 476, 46 S.W. 645, 646, the Court of Criminal Appeals (speaking through Judge Henderson) expressly declined to follow them. We quote from the opinion: "We are of opinion that while proceedings in qui tam actions may have been by the informer, by the commonwealth, or by the state in other jurisdictions, under the provisions of our constitution, it being an offense, the prosecution must run in the name of the state. So far as the disposition of the proceeds of the recovery where a fine is assessed is concerned, that can be distributed by the court trying the case. In such case it would be proper that the indictment or complaint show the name of the informer, and this would be sufficient authority for the court to make a disposition of the fine recovered."

The act before us, while imposing penalties for its violation, does not create a penal offense punishable by fine which could be enforced by imprisonment. It creates a liability enforcible by civil action, although by analogy some of the rules governing penal actions (such for example as that of strict construction) may be held to apply. The action is, however, one which inures to the State, and is maintainable only in the State's name and by its authorized officials, regardless of the fact that one-half of the recovery may inure to the interested party. The decisions which we regard as controlling this question, and which we shall briefly review, stated chronologically are: State v. Paris Ry. Co., 55 Tex. 76; State v. Moore, 57 Tex. 307; State v. I. & G. N., 89 Tex. 562, 35 S.W. 1067; Maud v. Terrell, 109 Tex. 97, 200 S.W. 375; Staples v. State, 112 Tex. 61, 245 S.W. 639; Allen v.

Fisher, 118 Tex. 38, 9 S.W.2d 731; State v. Court of Civil Appeals, 123 Tex. 549, 75 S.W.2d 253.

In the Paris Ry. case the Supreme Court held (Judge Gould writing and affirming Judge R. R. Gaines, then District Judge) that the county attorney could not institute and prosecute a suit in the name of the State to enjoin a railroad corporation from constructing its tracks "without any authority of law" along the streets of Paris. The court said: "The power given county attorneys 'to represent the state in all cases in the district and inferior courts in their respective counties' (Const., art. V, sec. 21), does not extend to the institution of suits like this, unless it be done *with the sanction and in the name of the attorney general.*" (Emphasis added.)

In the Moore case (Judge Stayton writing) it was held that under the provision in Art. IV, Sec. 22, that the Attorney General shall "perform such other duties as may be required by law" the legislature might make him the adviser of district and county attorneys, and the representative of the State for the recovery of money due the State *in counties in which there are no district and county attorneys;* but that it could not empower him to take control of cases in which the constitution makes the county and district attorneys the representatives of the State; nor to deprive those officers of the fees allowed in such cases.

In the I. & G. N. case it was held (Judge Denman writing) that the county attorney of Galveston County had no power to institute a quo warranto proceeding against the I. & G. N. Ry. Co. for "exercising power not conferred by law" [89 Tex. 562, 35 S.W. 1068], in taking possession of the G. H. & H. Ry. operating it and taking freights since that power was vested in the Attorney General under Const. Art. IV, Sec. 22, and was exclusive.

The Maud case was an original mandamus proceeding brought in the Supreme Court by the county clerk to compel the Comptroller to credit his account with commissions he had paid under a contract made by the Comptroller with one H. under a statute authorizing such employment to assist in collecting inheritance taxes due the State. It was held (Chief Justice Phillips writing) that the legislature could not devolve upon others the powers vested in the Attorney General and district and county attorneys, nor interfere with their

rights to exercise them; that it might provide assistance for them, but, since their powers are exclusive, it could not compel them to accept that assistance, and, if availed of, such assistance was in subordination to their authority.

The Staples case held (Judge Pierson writing) that the legislature could not confer upon a private citizen the right to bring a quo warranto proceeding in the name of the State against a nominee for office to prevent printing his name on the official ballot in the general election.

Allen v. Fisher (in an adopted opinion by the Commission of Appeals) held that a defeated candidate in a primary could not maintain an action to enjoin the successful candidate from having his name printed on the official ballot in the general election by reason of ineligibility of the latter.

The Court of Civil Appeals case was a quo warranto proceeding brought by the district attorney upon the relation of certain individuals against the Secretary of State and others to prevent certification of the name of a Democratic nominee for governor by reason of alleged violation of the campaign expenditures act. The trial judge granted a temporary injunction, which was dissolved on appeal to the Court of Civil Appeals, Kilday v. State ex rel. Candler, 75 S.W.2d 148. The district attorney declined to join those upon whose relation the proceeding was brought (relators) in a motion for rehearing in that court. The Court of Civil Appeals declined to entertain the motion and relators sought to compel such action by mandamus in the Supreme Court. Motion to file the petition for mandamus was overruled (Judge Greenwood writing) upon the ground (among others) that the district attorney was charged with the duty of conducting the litigation.

■ These cases establish, beyond controversy, we think, that the authority to bring and maintain actions in the courts to enforce the rights of the State is vested by the Constitution exclusively in the State's attorneys (General, district and county) and the legislature is without power to divest that authority or to delegate it to others.

We will now consider the Van Camp and Maud cases, above, which Agey contends support his right to institute and prosecute the suit.

The Maud case, as already stated, was an original mandamus proceeding to compel the Comptroller to credit the account of the County Clerk with fees he had paid under a contract for assistance in collecting inheritance taxes. The taxes collected had been paid without suit, and the question as to who was vested with authority to conduct litigation in case suit were necessary was not involved other than in the contention of the respondent that the contract was invalid in that the statute authorizing it vested that power in the party contracted with. The statute was construed as not so vesting that power in such party, under the established presumption of validity. Thus clearly in effect holding that it would have been invalid if given the construction contended for by respondent.

The Van Camp case was one by an applicant to purchase alleged unsurveyed school land brought under Art. 5323(2), Rev.St.1925, to compel the county surveyor to make an official survey of the land. In an elaborate discussion and review of authorities (in an adopted opinion by Judge Critz, then of the Commission) the provisions of the Article authorizing the suit were analyzed as follows:

"A careful reading of the statute conclusively shows that it is susceptible of but two constructions with reference to its purpose and intent, either of which leads to the conclusion that it is binding on the state, and therefore not invalid because not binding on the state. The two constructions are:

"(a) That it was the purpose and intent of the Legislature to constitute the applicant, who himself has an equitable interest in the land, though no legal title thereto, and whose interest is substantially identical with the interest of the state, the agent of the state to institute the suit on his own behalf, and on behalf of the state, for the purpose of determining the issue as to whether the land is vacant public school land. When the suit has been instituted against the surveyor, who is a sworn public official, it is made his duty to implead all adverse claimants. Also, under the general rules of practice and procedure in force in this state, any person who claims any interest in the land, but who is not impleaded by the surveyor, can intervene or be impleaded or joined as in ordinary civil cases. It is thus seen that all parties are before the court for the purpose, expressly

584

declared by the statute, of having a judicial determination as to whether the area is vacant public school land, that is, whether the land belongs to the state or to some other party to the suit.

"(b) That it was the purpose of the Legislature to permit the state to be sued by constituting the surveyor, who is a sworn public official, the agent of the state on whom citation is to be served. It thus appears that the applicant, who himself has an equitable interest in the land, though no legal title thereto, instituted the suit against the state by service of citation on the surveyor. It is then made the duty of the surveyor to implead all adverse claimants. Also, under this theory, any person not impleaded by the surveyor can intervene or be joined or impleaded as in ordinary civil suits. Under this theory all parties, including the state, are before the court just as in (a) above for the purpose expressly declared by the statute of determining whether the land belongs to the state as a part of its public school domain, or to some other party to the suit.

"We do not consider it necessary for us to determine which of the above constructions expresses the legislative, intent, for the reason that, as above shown, both lead to the same result." [122 Tex. 383, 61 S.W.2d 776.]

Suits with similar objective have in later decisions been treated as suits *against* the State and not maintainable except under express legislative authorization. See Short v. W. T. Carter & Bro., 133 Tex. 202, 126 S.W.2d 953; United P. C. v. Hughes, 137 Tex. 21, 152 S.W.2d 327.

It is to be borne in mind that the suit authorized by Art. 5323(a) was in connection with the disposition of the State's public domain. From the earliest times the courts had uniformly recognized the right of those complying with the various pertinent statutes to enforce their rights in the courts, whether by mandamus to compel state officials to perform ministerial (as distinguished from discretionary) duties or by plenary suit against adverse claimants. Leading prior decisions upon this subject were reviewed in the Van Camp case; and Art. 5323(2) was upheld upon the holding: "that such officers [attorneys general, district and county] have the right [under the Article] to control the litigation for the state just the same as in any ordinary suit to which the state is a party." The suit provided for under Art. 5323(2) was au-thorized only in those cases in which the Land Commissioner, the representative of the State, "declines to recognize the existence of the area as public school land and refuses to authorize a survey to be made." Under Art. 5323(1) it was made the duty of the Commissioner to order a survey if he found the land to be unsurveyed public school land or if he found that question doubtful. We have no doubt of the right of the applicant, in case of a favorable finding of the Commissioner, to compel a survey by mandamus either against the Commissioner, if he should refuse to order it, or against the county surveyor, if he should refuse to make it upon the Commissioner's order. The suit authorized under Art. 5323(2) was one adverse to a ruling or finding of the State's agent, the Land Commissioner, and therefore in the nature of a judicial appeal from that ruling or finding. It would therefore appear that the State's position in the litigation would be that of a defendant; and this, regardless of the fact that the State might profit by the successful prosecution of the applicant's suit. The State has other interests in the disposition of its public domain than the mere recovery of specific lands claimed to have been lawfully severed from the public domain. There is nothing in the Van Camp opinion to warrant the inference that the State's attorneys would have a right to dismiss the suit or otherwise control it in so far as the rights of the applicant were concerned. Such construction would defeat the very purpose of the statute. The above quotation from the Van Camp case was written under discussion of the question whether Art. 5323 (2) made the State a party to the suit. As regards that question it was immaterial in what relation the State was thereby made a party.

The statute before us was enacted in connection with the conservation of oil, a natural resource. Its provisions inhibiting discrimination among producers was primarily in furtherance of conservation objectives. In this respect it was essentially different from statutes (by no means uncommon) prescribing penalties recoverable by individuals for unlawful discriminations by public service corporations, in which the State has no interest, and in which the penalties are recoverable by such individuals alone. See Art. 6475 and Thompson v. M., K. & T. R. Co., 103 Tex. 372, 126 S.W. 257, 128 S.W. 109. There is nothing in the language of Sec. 11 of the act which pur-

ports to authorize a suit by the aggrieved party *for the use of the State*. Nor does the language purport to authorize *institution* or *prosecution* of the suit *by* the aggrieved party *in his own behalf*. It merely authorizes *recovery* of one-half of the penalty "by and for the use of" and "in the name of" parties aggrieved. Had the legislature intended to authorize institution of this suit by aggrieved parties "a few plain words would have expressed that intention." (Moore case, above.)

■ Production of oil is one of this State's largest and most important industries; and its conservation has been a leading subject of legislative solicitude for the past quarter century. A large volume of statutory law has been enacted; the administration of which has been delegated to the Railroad Commission; which body has been vested with large discretionary powers. The common purchaser law is, as stated, a part of this legislation. It was deemed essential in order to provide for the orderly marketing of oil, and the prevention of waste which would result from stopping the flow of producing wells due to lack of marketing facilities otherwise available to small producers. Discrimination against a producer would necessarily create or tend to create such waste. Sec. 8, Art. 6049a, which required common purchasers to purchase "without discrimination in favor of one producer or person as against another in the same field, and without unjust or unreasonable discrimination as between fields," also provided, "the question of justice or reasonableness to be determined by the Railroad Commission." It further provided that the Commission might relieve any common purchaser after due notice and hearing from the duty of "purchasing petroleum of inferior quality or grade." The American's defenses to the merits of the action were predicated upon the alleged inferior and unmerchantable grade of Agey's oil. The Commission had the unquestioned authority to order the American to purchase the oil upon proper showing that it was its statutory duty to do so. Express and specific (even drastic) means are given it in "the discharge of its duties and the enforcement of its powers and authority under this (the Oil and Gas)

title." Art. 6024 provides in this regard that "the Commission shall institute suits, hear and determine complaints, require the attendance of witnesses, pay their expenses out of the fund herein created, and sue out such writs and process as may be necessary for the enforcement of its orders, and punish for contempt or disobedience of its orders as the district court may do." We think it clear that either party had the right to appeal to the Commission for relief; with further right of appeal to the courts from an adverse order thereon. In so far as Agey's rights under the statute may have been infringed, he had ample protection through the Commission and by suit for damages and injunction in the courts. The statute did not give him a *right* of *action* for a penalty. It gave that right to the State for a violation of its conservation laws, his interest being only to share in the recovery to the extent of one half. The above statement of Agey's counsel shows a categorical refusal (after investigation) of the Attorney General's department to institute or participate in the action, absent which we hold the suit was unauthorized and should be abated.

The trial court's judgment is reversed and the cause remanded with instructions to abate the suit.

Reversed and remanded with instructions.

On Appellee's Motion for Rehearing.

■ In addition to the prayer in his original brief for an unqualified affirmance, Agey's motion prays, in the alternative, that the judgment be affirmed only as to his half of the recovery, or that the cause be remanded with permission to replead and sue only for half of the penalties. We think the statute clearly creates a single, indivisible cause of action, which must be prosecuted in a single suit, instituted by the State through its proper officials; and that Agey's rights are limited to sharing in the recovery. We make this statement in order to make clear that we are overruling the alternative prayer of the motion upon its merits, and not upon a matter of practice.

The motion is overruled.

Overruled.