**OAKLEY et al. v. KENT et al.**

No. 2454.

Court of Civil Appeals of Texas. Eastland.

June 9, 1944.

Barnes & Barnes and C. A. Lord, all of Beaumont, for appellants.

920

Shelby K. Long, Earl Black and Lamar Cecil, all of Beaumont, and Quentin Keith, of Port Arthur, for appellees.

LESLIE, Chief Justice.

M. W. Oakley, D. A. Daigle and B. E. Quinn, resident taxpaying citizens of Jefferson County, instituted this suit against W. W. Pat Kent, County Judge of said County, R. Clyde Black, H. O. Mills, Louis Welch, and Frank Helmke, County Commissioners, and also against Jefferson County, Dwight Morrison, County Treasurer, E. S. Foreman, County Auditor, and Glen Gute and Roy L. Michael, claiming to be deputy assessor-collector of taxes and purchasing agent, respectively, of Jefferson County since about June 1, 1943, and who were asserting they were officers of said county.

The plaintiffs sought a permanent injunction to restrain said county and officers from carrying on the affairs of the county under the provisions of Senate Bill No. 262, passed at the 48th Legislature (1943 Vernon's Texas Session Law Service, p. 382, Vernon's Ann.Civ.St. arts. 1580 note, 2350(8), 3902h), and also sought to have the District Court of that county enter a declaratory judgment construing said bill, which the plaintiffs allege is unconstitutional and void.

The defendants, except one, answered by general and special denials, special exceptions, etc., and contended for the constitutionality of the law. One of the commissioners, H. O. Mills, answered for himself and alleged that the matters of fact set forth in the plaintiffs' petition were true and correct and he adopted the same and joined in the contention that the bill is unconstitutional and void. His position in the suit was recognized as making common cause with the plaintiffs.

At the conclusion of the plaintiffs' testimony the court instructed a verdict in favor of the defendants and against the plaintiffs. From such order and judgment this appeal is prosecuted.

In the trial court the defendants in due order filed pleas in abatement and special exceptions to the same effect which at the outset challenged the authority of the appellants to bring and maintain this suit. Abatement was sought on the ground that from the plaintiffs' petition it was apparent they had failed to assert or allege any justiciable interest in the matters in controversy, and that they stood as mere individual citizens of Jefferson County without independent right to maintain the action. Defendants further excepted to the petition on the ground that the plaintiffs had not alleged that they had suffered any injury or damage by reason of the acts and things charged to the defendants and complained of in the petition.

Defendants further excepted to the plaintiffs' petition on the ground that the allegations that they would suffer irreparable injury and loss and had no adequate remedy at law was a mere conclusion of the pleader. When the evidence was all in defendants also called the court's attention to their motion to abate, since, as they contended, it became apparent therefrom that other counties were affected by the statute, namely, Bexar, Dallas, Harris and Tarrant, which were not made parties to the suit and the population of each such county exceeded 140,000 inhabitants.

Defendants' pleas in abatement and special exceptions were by the court overruled and exceptions taken by the defendant. However, the trial court instructed verdict in their favor and the specific reasons for such action is not reflected by the record.

The ruling and judgment of the trial court is attacked by several points of law, and points 1, 2, and 3 are briefed together and will be so considered here.

By point 1 the contention is made that the pleadings and the evidence conclusively show that Jefferson County and the commissioners court have recognized Senate Bill 262 and have adopted its provisions as being constitutional, and by their official acts said county and its commissioners court on June 1, 1943, proceeded under the provisions of said bill to carry on the affairs of the county in accordance therewith. That they then adopted provisions of Sec. 1 of said bill and raised the salary of each commissioner to the sum of $4,800 per annum. That they proceeded under the provisions of Sec. 3 of the bill and employed one "Deputy Assessor-Collector of Taxes" and fixed his salary at $3,600 per annum. That they also adopted the provisions of Sec. 4 of the bill and pursuant to its terms employed a "Purchasing Agent", whose salary they fixed at $3,600 per annum.

That it conclusively appears that all of said salaries have been and will continue to be paid out of the public funds of Jefferson County raised by taxation so that such funds have been and will continue

to be expended without authority of law and in violation of the Constitution and laws of this state. That by reason of such acts the plaintiffs (shown to be resident taxpaying citizens of said county, as well as all others similarly situated therein) have sustained and will continue to sustain injuries as a result of the enactment and adoption of said Bill 262, which is unconstitutional and void. That by reason of the above facts and circumstances the plaintiffs are entitled to relief by permanent injunction as prayed for, and that the trial court erred in giving a peremptory instruction in favor of the defendants and entered judgment denying them any relief whatever.

Point 2 challenges said ruling of the trial court on the ground that the bill is wholly unconstitutional in that Sec. 3 thereof, having reference to the employment and payment of a deputy assessor-collector of taxes, applies only to counties having a population of 140,000 to 220,000 inhabitants, according to the 1940 Federal census, so that all other counties are excluded and Jefferson County only comes within such provision, and so the provision excludes counties of lesser or greater population from employment and paying a deputy assessor-collector of taxes, and for such reasons Sec. 3 is arbitrary and discriminatory and is but a local or special law passed under the guise of a general statute and violates Art. 3, Sec. 56 of the State Constitution, Vernon's Ann.St., forbidding the Legislature to pass any law regulating the affairs of any such county, creating offices or prescribing the power or duties of officers in counties.

Point 3 challenges the court's action in giving the peremptory instruction and refusing to enjoin the county treasurer and county auditor of Jefferson County from issuing, registering and paying the salary of the purchasing agent for said county according to the provisions of Sec. 4(a) of said bill, because the bill is unconstitutional in that Sec. 4(a), having reference to the creation and payment of a county purchasing agent, applies to the 1940 Federal census so that all other counties are excluded and Jefferson County only comes within such provisions and so counties of lesser or greater population are not permitted to exercise the power of appointing a purchasing agent. That by reason of such situation Sec. 4(a) is arbitrary and discriminatory and but a local or special law

passed under the guise of the general statute and violative of Art. III, Sec. 56, forbidding the legislature passing any such law regulating the affairs of any such county, creating offices or prescribing the powers or duties of the officers in counties.

Plaintiffs Oakley, Daigle and Quinn, being resident property tax-paying citizens of Jefferson County and owners of real and personal property therein, brought this suit for themselves and other citizens similarly situated. Under the pleading and the testimony we think they had a right to do so and to challenge thereby the legality of the actions of said county and its officials with reference to their adoption and procedure under said senate bill. In support of our conclusion that these plaintiffs have such justiciable interest in the subject matter of the suit, we cite, among other authorities, Terrell v. Middleton, Tex.Civ.App., 187 S.W. 367, 369 writ refused 108 Tex. 14, 191 S.W. 1138, which held, in part, as follows:

"Appellee was seeking to prevent the diversion of taxes collected by the state, a portion, no matter how small, of which had been paid by appellee. Citizens are allowed to prevent, by injunction, the collection of illegal taxes, and the reasons for allowing them this power are no stronger than to allow restraint of an officer who seeks to expend the taxes when collected for an illegal or unconstitutional purpose. The diversion of the taxes after collection from legal purposes would be equally as injurious to the taxpayer as the collection of illegal taxes. In either event, the burdens of the taxpayer are increased. As said by the Supreme Court of the United States in Crampton v. Zabriskie, 101 U.S. [601], 609, 25 L.Ed. 1070, and quoted and approved by the Supreme Court of Texas in City of Austin v. McCall, 95 Tex. 565, 68 S.W. 791:

"'Of the right of resident taxpayers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county, or the illegal creation of a debt which they in common with other property holders of the county may otherwise be compelled to pay, there is at this day no serious question. * * * Certainly in the absence of legislation restricting the right to interfere in such cases to public officers of the state or county, there would seem to be no substantial reason why a bill by or on behalf of individual taxpayers should not be enter-

tained to prevent the misuse of corporate powers.'"

For other authorities see City of Beaumont v. Matthew Cartwright Land & Improvement Co., Tex.Civ.App., 224 S.W. 589, writ refused; Yett, Mayor v. Cook, 115 Tex. 205, 281 S.W. 837, 841, 842; Dubose v. Woods, Tex.Civ.App., 162 S.W. 3; McLaughlin v. Smith, Tex.Civ.App., 140 S.W. 248; Oden v. Barbee, 103 Tex. 449, 129 S.W. 602; Moore v. Coffman, Tex.Civ.App., 189 S.W. 94; Id., 109 Tex. 93, 200 S.W. 374; Maud, County Tax Collector v. Terrell, 109 Tex. 97, 200 S.W. 375 (Pt. 2); 40 Tex.Jur. p. 183, § 131, and authorities cited.

We come now to the points challenging the validity or constitutionality of Senate Bill 262 in a sense adopted by Jefferson County and pursuant to the terms of which the duly constituted authorities in that county are proceeding to govern the affairs thereof. After due consideration of these various contentions insisted upon by the appellant, we have reached the conclusion that said bill is invalid and unconstitutional. That both Sections 3 and 4(a) are so for the same reasons.

In a very definite way Attorney General Gerald C. Mann, in an opinion approved by that Department June 9, 1943, so declares said bill. His reasons therefor are fully stated in that opinion, and we adopt pertinent portions thereof and the reasons as basis for the conclusions this court now entertains concerning the constitutionality of said bill. That opinion, in part, is as follows:

"Senate Bill No. 262, Acts of the 48th Legislature, Regular Session, 1943, is an act 'fixing the compensation of certain designated county officers in certain counties; providing for the creation and operation of certain offices in certain counties; providing the methods and means by which certain officers in certain designated counties shall be selected and compensated; declaring certain acts, contained in Section 4, to be unlawful; prescribing a penalty for the violation of the provisions of Section 4 of this Act; providing a saving clause; repealing all laws or parts of laws in conflict, and declaring an emergency.'

"Sections 4 and 5 of Senate Bill No. 262, supra, read as follows:

"'Sec. 4. (a) In said counties in this state having a population of more than one hundred forty thousand (140,000) and less than two hundred twenty thousand (220,-000) inhabitants according to the last preceding or any future Federal Census, where the Federal Government has authorized the construction of large synthetic rubber plants in addition to vast ship building enterprises, additional duties have been placed upon county officers of such counties due to such construction, necessitating and making it economically necessary that there be a central purchasing agency for such counties, and therefore a majority of a board composed of the Judges of the District Courts and the County Judge shall appoint a County Purchasing Agent. The County Purchasing Agent shall hold office for a term of two (2) years unless removed for cause. He shall execute a bond in the sum of Ten Thousand ($10,000.00) Dollars, payable to said county, for the faithful performance of his duties. He shall receive an annual salary of not less than Three Thousand ($3,000.00) Dollars nor more than Forty-two Hundred ($4200.-00) Dollars, payable in equal monthly installments out of the County General Fund by warrant drawn on the County Treasurer by the County Auditor. Said Purchasing Agent may have such help, equipment, supplies and traveling expenses, with the approval of a majority of said Board of Judges, as they may deem advisable, the amount of expenses to be approved by a majority of said Board and paid out of the County General Fund by warrant drawn on the County Treasurer by the County Auditor.

"'(b) All equipment, materials, and supplies, together with the repairs of same, required, used or to be paid for out of any County Fund, shall be purchased by the County Purchasing Agent, upon written specifications and upon requisitions submitted by the county official or department requiring same. So far as practicable, such purchases for any office or department shall be in amounts calculated to be adequate for one year's needs. Where the total consideration on any contract is likely to be in excess of One Hundred Fifty ($150.00) Dollars, purchases shall be made on the basis of the lowest and best bid, with the right to reject any or all bids, and a sufficient bidder's bond may be required. A complete record of bids and purchase contracts awarded shall be kept on file for not less than ten (10) years. In making such purchases the County Purchasing Agent shall contract in the name of the county.

" '(c) When delivery is made on any purchase, or repair work, the County Purchasing Agent shall secure from the county officer or department head receiving the same a receiving memorandum in triplicate, certifying that the equipment, materials, supplies, or repairs have been received in good order and according to specifications. Such receiving memorandum shall be attached to the respective invoice, rendered in triplicate, when such invoice is approved by the County Purchasing Agent. A copy of each of the receiving memorandum and the approved invoice shall be forwarded to the County Auditor, and a copy each shall be kept on file in the office of the County Purchasing Agent for not less than ten (10) years.

" '(d) The County Purchasing Agent shall prepare and keep a perpetual inventory of all property of the county for each department and office. A copy of such inventory as of July 1st of each year shall be furnished the Commissioners Court and the County Auditor not later than the following July 20th. It shall be the duty of the County Purchasing Agent to transfer equipment, materials, and supplies from one department or office to another in the interest of efficiency and economy.

" '(e) All purchases made by such Agent shall be paid for by warrants drawn by the County Auditor on the County Treasurer as now provided by law.

" '(f) It shall be unlawful for any person to make any purchases of equipment, materials, supplies, or repairs for the same, other than the County Purchasing Agent, and no warrant shall be approved by the County Auditor in payment for any purchase not made by such Agent.

" '(g) Any person violating any of the provisions of Section 4 of this Act shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than Two Hundred ($200.00) Dollars nor more than One Thousand ($1,000.00) Dollars, or imprisoned in the county jail of said county for not less than thirty (30) days nor more than one (1) year, or by both such fine and imprisonment.

" 'Sec. 5. If any part of this Act shall be held to be unconstitutional, then all the Act shall be unconstitutional. The Legislature hereby declares that it would not have passed the remaining parts of this Act if it had known that such part or parts would be declared unconstitutional.'

"It is clear that the law under consideration regulates the affairs of the counties to which it applies, creates offices, and prescribes the powers and duties of officers. Is it a general law, or is it a special and local law in violation of the provisions of Article III, Section 56?

"Article III, Section 56 of the State Constitution provides as follows:

" 'The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing:
* * *

" 'Regulating the affairs of counties, cities, towns, wards or school districts;
* * *

" 'Creating offices, or prescribing the powers and duties of officers, in counties, cities, towns, election or school districts;
* * *.'

"Generally speaking it is stated in our opinion No. O—2221:

" 'A law which applies only to a part of a natural class of persons or things must predicate its inclusion of the part and exclusion of the balance upon characteristics peculiar to the part, which, considering the objects and purposes of the law, afford reasonable ground for restricting the application of the law to the part. Classification must be reasonable and natural, not arbitrary and capricious. Arbitrary designation is not classification. The vice of local or special laws is that they rest on arbitrary designation; that they do not embrace and affect all of the class to which they are naturally related. 25 R.C.L. pp. 815-816; 12 Am.Jur. p. 146; Smith v. State, [120 Tex.Cr.R. 431], 49 S.W.2d 739; Randolph v. State, [117 Tex.Cr.R. 80], 36 S.W.2d 484; Clark v. Finley, 93 Tex. 171, 54 S.W. 343; City of Ft. Worth v. Bobbitt, 121 Tex. 14, 36 S.W.2d 470, 41 S.W.2d 228; Bexar County v. Tynan, 128 Tex. 223, 97 S.W.2d 467.

" 'Because population as a basis for classification has been sustained by the courts in respect to legislation on certain subjects, it has been assumed, erroneously, that population brackets will serve in all instances to avoid the condemnation of the Constitution. This mistaken assumption proceeds from a failure to note that population has been sustained as a basis for classification only in those instances where it bore a reasonable relation to the objects and purposes of the law and was founded upon rational difference in the necessities or condi-

tions of the groups subjected to different laws. Where it has been determined that, considering the objects and purposes of the law, differences in population afford no rational basis for discriminating between groups of the same natural class, classification on the basis of population has been termed arbitrary selection, and the law has been held to be special and local. Randolph v. State, supra.

"'Where population might have served as a rational basis for classification, if the object and purpose of the law had been to increase the compensation of county officers, since the purpose of the particular law was to lower such compensation the classification was held to be inverted and the law special and local. Bexar County v. Tynan, supra. * * *'

"One of the objects and purposes of the law under consideration is to permit counties to appoint a purchasing agent. A natural class, of course, includes all counties in the state. This law extends such power only to those counties having a population, according to the last preceding Federal Census or any future Federal Census, of not less than 140,000 nor more than 220,000 inhabitants. The only county meeting these requirements, at the time of the passage of the law, was Jefferson County.

"As heretofore stated, Section 4 of the law under consideration applies only to counties having a population of 140,000 inhabitants to 220,000 inhabitants according to the 1940 Federal Census. Therefore, Jefferson County comes within the provisions of the above mentioned section. Counties of lesser or greater population are not permitted to exercise the power of appointing a purchasing agent by said Senate Bill No. 262. We have failed to find any general statute authorizing counties to employ or appoint purchasing agents. It is our opinion that the classification is a mere designation which is no classification at all, but, on the contrary, is inverted and discriminatory as a law considered by the Supreme Court in the Tynan case, supra, (also see the case of Miller et al. v. El Paso County, 136 Tex. 370, 150 S.W.2d 1000).

"Section 4 of the act creates the office of purchasing agent and prescribes the powers and duties of the officer holding such office.

"If population affords a ground for creating the office of County Purchasing Agent, it must be upon one of two theories:

"(1) The smaller the population of the County, the greater the need of such an office

"(2) The greater the population of the County, the greater the need of such an office.

"The bracket is from 140,000 to 220,000. Upon the first theory the law is arbitrary and discriminatory because it excludes counties below 140,000, which would have a greater need than the counties in the bracket. Upon the second theory the law is likewise arbitrary and discriminatory in that it does not embrace counties having a population above 220,000, which counties would have a greater need for a purchasing agent than counties within the bracket.

"In view of the foregoing authorities it is our opinion that Section 4 of the act clearly violates the provisions of Article III, Section 56, of the State Constitution and is therefore unconstitutional and void. It is our further opinion that in view of Section 5 of said Act, the entire Act is of no force and effect, as the Legislature declares in effect that it would not have passed the remaining parts of the Act had it known any part or parts thereof would be declared unconstitutional."

In addition to the above authorities, we cite Ex Parte Carson, 143 Tex.Cr.R. 498, 159 S.W.2d 126. That is an opinion by the Court of Criminal Appeals of this state and it cites Miller et al. v. El Paso County, 136 Tex. 370, 150 S.W.2d 1000, and is in harmony therewith.

From the foregoing it follows that said plaintiffs are entitled to the injunctive relief sought.

■ Said Bill 262 is unconstitutional for further reasons: Sec. 3 thereof, having reference to the employment and the payment of a deputy assessor-collector of taxes, has the effect (1) of creating in Jefferson County the office of Deputy Assessor-Collector of taxes and prescribing the powers and duties of such officer in the county and (2) of interfering with the performance of the official duties and obligations of the regular tax assessor and collector of said county, whose office is created by the Constitution and who is duly elected by the qualified voters of said county; and Sec. 3 has the further vice of relieving such duly elected assessor-collector of taxes from the due performance of his official duties, and for such reasons said bill and sec. 3 thereof is violative of the

Constitution of the State of Texas, and Art. III, Sec. 56 thereof, which is, in part, as follows: "Sec. 56. The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing: * * * Regulating the affairs of counties, cities * * * Creating offices, or prescribing the powers and duties of officers in counties, cities * * * or school districts * * * or otherwise relieving any assessor or collector of taxes from the due performance of his official duties * * *."

If said bill has the effect in any respect of relieving the regularly elected assessor-collector of taxes from the due performance of his official duties, then it must be held to be an unconstitutional enactment, and we think it is plain that the bill has such effect. It is unnecessary to again discuss at this point the nature of the bill as a local or special law passed under the guise of a general statute but applicable to Jefferson County alone and based on a classification that is arbitrary and discriminatory. Point 4 is sustained.

While no character of title, however accurate, would render Senate Bill 262 constitutional in view of the vices therein and heretofore pointed out, it is obvious that what purports to be the title of said act is inaccurate, indefinite and misleading, and for that reason is, for all intents and purposes, no title at all in contemplation of constitutional requirements. If in drafting the bill there had been a design to throw the public and the legislature off guard or induce legislative repose or inattention while such bill was being enacted, more appropriate language for such purposes could hardly have been chosen.

■ The title to the bill purports to contain more than one subject in the bill, but does not embrace therein any reference to the creation or operation of the office of county purchasing agent or the creation of a central purchasing agency for any county in the state. And neither does it embrace any reference to the employment by the commissioners court of a deputy assessor-collector of taxes in any county. Nor does it specify the qualification of any such purchasing agent or deputy assessor-collector of taxes. For these reasons the bill is in contravention of Art. III, Sec. 35 of the State Constitution, which, among other things, requires that "no bill * * * shall contain more than one subject, which shall be expressed in its title."

Further, there is nothing in the title that in any way suggests that Art. 1659 of the Revised Statutes, enacted in 1921 and still in force at the time this bill was passed, would be repealed, or in any way affected. The title gave no information to the Legislature or the people that the purchasing agent or central purchasing agency referred to in the body of the bill was to supplant the county auditor and the provisions of the General Statutes (Art. 1659) with respect to competitive bidding and advertising therefor. The title does not meet constitutional requirements. These conclusions are believed to be warranted and required by the opinions in Eck v. Eck, Tex. Civ.App., 145 S.W.2d 231, writ refused; Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799.

■ If Article 1659, requiring materials for the use of the county or any of its officers, etc., to be "purchased on competitive bids", evinces an intention of the legislature to declare a public policy in this state, as held in Wyatt Metal & Boiler Works v. Fannin County, Tex.Civ.App., 111 S.W.2d 787, then Senate Bill 262 should not be permitted either by reason of its silence or deception to set at naught such wholesome public policy.

What has been said doubtless disposes of the material and controlling questions presented by this appeal. However, there is one other question raised which under some views may be regarded as material. We express our conclusion thereon:

■ For the same reasons we have heretofore held that the plaintiffs, resident property taxpaying citizens of Jefferson County, had such interest or justiciable rights as entitled them to prosecute this suit for injunctive relief, we now conclude that they have for the same reasons the right to avail themselves of the terms and provisions of the "Uniform Declaratory Judgments Act" (1943 Vernon's Texas Session Law Service, 48th Legislature, p. 265, Vernon's Ann.Civ.St. art. 2524—1) for the purpose of determining the question of the proper construction and validity of said statutes (Senate Bill No. 262) and to have a declaration of their rights and status thereunder. Acme Finance Co. v. Huse, 192 Wash. 96, 73 P.2d 341, 111 A. L.R. 1345; Brindley et al. v. Meara, 209 Ind. 144, 198 N.E. 301, 101 A.L.R. 682; State of Wisconsin v. Dammann, 220 Wis. 17, 264 N.W. 627, 103 A.L.R. 1089; Kalman v. Shubert, 270 N.Y. 375, 1 N.E.2d

470, 105 A.L.R. 289, with annotations to each. See also Douglas Oil Co. v. State, Tex.Civ.App., 81 S.W.2d 1064; 23 Words and Phrases, Perm.Ed., page 474, for other authorities. From that angle or procedure we reach the same conclusion that Senate Bill 262 is void and unconstitutional for the foregoing reasons, as contended by plaintiffs.

In any event, the plaintiffs claim primary relief by permanent injunction, and it is the order of this court, that the same be granted as follows: (1) That the County of Jefferson and its Commissioners Court be enjoined from proceeding in any manner under provisions of Senate Bill 262 in carrying on the affairs of that county; (2) that the County Auditor be permanently enjoined from issuing or approving any warrant on the Treasurer of said county covering the salaries of the commissioners and the salaries of the Deputy Assessor-Collector of Taxes and the Purchasing Agent as fixed under the provisions of said Senate Bill; and (3) that the County Treasurer be restrained from registering and from paying any warrant or warrants drawn on him as County Treasurer by the County Auditor covering the salary or any part of the salary of the Commissioners and the salaries of the purchasing Agent and the Deputy Assessor-Collector of taxes, as fixed and provided under the provisions of said Senate Bill.

The views we entertain concerning the merits of this case render inapplicable the authorities relied on by appellees and we shall not discuss the same.

For the reasons assigned, the judgment of the trial court is reversed and here rendered for appellants (plaintiffs below), as above stated.