ACCEPTED
15-24-00104-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
2/27/2025 3:35 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-24-00104-CV

_____

IN THE COURT OF APPEALS
FIFTEENTH JUDICIAL DISTRICT OF TEXAS
AT AUSTIN, TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
2/27/2025 3:35:38 PM
CHRISTOPHER A. PRINE
Clerk

_____

**IN RE:**
**SANOFI-AVENTIS U.S. LLC**

_____

Original Proceeding from Cause No. 23-0698
71st District Court Harrison County, Texas

_____

**NOTICE OF SUPPLEMENTAL AUTHORITY**

_____

Oral Argument Requested

WAYNE B. MASON
State Bar No. 13158950
wayne.mason@faegredrinker.com
S. VANCE WITTIE
vance.witte@faegredrinker.com
State Bar No. 21832980
DAWN MCCORD
dawn.mccord@faegredrinker.com
Texas Bar No. 24002934
FAEGRE DRINKER BIDDLE &
REATH LLP
2323 Ross Ave., Suite 1700
Dallas, Texas 75201
(469) 357-2500
Fax: (469) 327-0860

Charles Everingham IV
State Bar No. 00787447
chad@millerfairhenry.com
Brett F. Miller
State Bar No. 24065750
brett@millerfairhenry.com
MILLER, FAIR, HENRY, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
(903) 757-6400
(903) 757-2323 (fax)

CARRIE S. LOVE
*Pro Hac Vice*
carrie.love@faegredrinker.com
FAEGRE DRINKER BIDDLE &
REATH LLP
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
(215) 988-2700
Fax: (215) 988-2757

ALEC P. HARRIS
*Pro Hac Vice*
alec.harris@faegredrinker.com
FAEGRE DRINKER BIDDLE &
REATH LLP
1144 15th St., Suite 3400
Denver, Colorado 80202
(303) 607-3500
Fax: (303) 607-3600

**COUNSEL FOR SANOFI-AVENTIS U.S. LLC**

Defendant-Relator sanofi-aventis U.S. LLC ("Sanofi") respectfully submits this Notice of Supplemental Authority to call the Court's attention to the State of Texas' Brief on the Merits filed on November 20, 2024 in *In re Novartis Pharmaceuticals Corp.*, No. 24-0239 (Tex.), attached here as Exhibit A.

Like the present case, the *Novartis* case is a non-intervened *qui tam* action filed by a corporate relator in Harrison County under the Texas Health Care Program Fraud Prevention Act ("THFPA") (previously known as the Texas Medicaid Fraud Prevention Act). Despite having elected not to intervene, the State of Texas filed a merits brief to defend the statute from allegations that it unconstitutionally divests the representational authority of State attorneys. In its brief, the State argues that the THFPA "includes *qui tam* provisions that incentivize and deputize private whistleblowers to pursue fraud claims on the State's behalf," and that this arrangement is a "successful public-private partnership." Brief at 1; *see also id.* at 11. The State further explains that the THFPA's *qui tam* provisions "explicitly preserve the Attorney General's authority to take over and otherwise control any *qui tam* suit brought on behalf of the State," and details the many "provisions [in the THFPA] designed to ensure that the State maintains control over these suits" from "the moment relator files [them]." *Id.* at 4, 15-19, 22-23; *see also* Reply In Support of Petition for Writ of Mandamus at 6-8 (discussing the same provisions). The State

concludes that this arrangement is "no different than if the State had opted to pursue the civil-remedies claim itself." *Id.* at 13.

The State's brief is relevant to this Court's jurisdiction. The brief shows that it is the position of the State of Texas, the named plaintiff in this action, that THFPA cases like this matter are for all intents and purposes brought by and for the State. *See* Tex. Govt. Code § 22.220(d)(1).

Dated: February 27, 2025

Respectfully Submitted,

/s/ S. Vance Wittie
WAYNE B. MASON
State Bar No. 13158950
wayne.mason@faegredrinker.com
S. VANCE WITTIE
State Bar No. 21832980
vance.wittie@faegredrinker.com
DAWN S. MCCORD
State Bar No. 24002934
dawn.mccord@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201
(469) 357-2500
(469) 327-0860 (fax)

CARRIE S. LOVE
*Pro Hac Vice*
Carrie.Love@Faegredrinker.Com
FAEGRE DRINKER BIDDLE & REATH
LLP
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
(215) 988-2700
Fax: (215) 988-2757

ALEC P. HARRIS
*Pro Hac Vice*
alec.harris@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH
LLP
1144 15th St., Suite 3400
Denver, Colorado 80202
(303) 607-3500
Fax: (303) 607-3600

**ATTORNEYS FOR DEFENDANT**

3

## CERTIFICATE OF SERVICE

This is to certify that on February 27, 2025, true, correct, and complete copy of this Reply has been served on all counsel of record via a court-approved electronic filing system or by certified mail, return receipt requested.

/s/ S. Vance Wittie
S. VANCE WITTIE

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Danette Dykema on behalf of Sherman Wittie
Bar No. 21832980
Danette.dykema@faegredrinker.com
Envelope ID: 97888089
Filing Code Description: Other Document
Filing Description: Notice of Supplemental Authority
Status as of 2/27/2025 3:44 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Sherman Vance ("Vance")Wittie | | vance.wittie@faegredrinker.com | 2/27/2025 3:35:38 PM | SENT |
| Wayne B.Mason | | wayne.mason@faegredrinker.com | 2/27/2025 3:35:38 PM | SENT |
| Danette Dykema | | Danette.dykema@faegredrinker.com | 2/27/2025 3:35:38 PM | SENT |
| Dawn S. McCord | | dawn.mccord@faegredrinker.com | 2/27/2025 3:35:38 PM | SENT |
| Michael Catapano | | mcatapano@mckoolsmith.com | 2/27/2025 3:35:38 PM | SENT |
| Rick Halper | | rhalper@mckoolsmith.com | 2/27/2025 3:35:38 PM | SENT |
| Radu Lelutiu | | rlelutiu@mckoolsmith.com | 2/27/2025 3:35:38 PM | SENT |
| Jennifer Truelove | | jtruelove@mckoolsmith.com | 2/27/2025 3:35:38 PM | SENT |
| Sam Baxter | | sbaxter@mckoolsmith.com | 2/27/2025 3:35:38 PM | SENT |
| Denise Lopez | | dlopez@mckoolsmith.com | 2/27/2025 3:35:38 PM | SENT |
| Hannah Mirzoeff | | hmirzoeff@mckoolsmith.com | 2/27/2025 3:35:38 PM | SENT |
| Angel Devine | | adevine@mckoolsmith.com | 2/27/2025 3:35:38 PM | SENT |
| melone DeRose | | Melonie.DeRose@LanierLawFirm.com | 2/27/2025 3:35:38 PM | SENT |
| Zeke DeRose | | Zeke.Rose@LanierLawFirm.com | 2/27/2025 3:35:38 PM | SENT |
| Carrie SLove | | carrie.love@faegredrinker.com | 2/27/2025 3:35:38 PM | SENT |
| Alec P. Harris | | alec.harris@faegredrinker.com | 2/27/2025 3:35:38 PM | SENT |

Exhibit A

FILED
24-0239
11/20/2024 3:27 PM
tex-94528158
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

**No. 24-0239**

# In the Supreme Court of Texas

————

IN RE NOVARTIS PHARMACEUTICALS CORPORATION,
*Realtor.*

————

On Petition for Writ of Mandamus
to the 71st Judicial District Court, Harrison County

————

## BRIEF ON THE MERITS FOR
## REAL PARTY IN INTEREST THE STATE OF TEXAS

————

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

AARON L. NIELSON
Solicitor General

EVAN S. GREENE
Assistant Solicitor General
State Bar No. 24068742
Evan.Greene@oag.texas.gov

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for Real Party in Interest
the State of Texas

# IDENTITY OF PARTIES AND COUNSEL

**Relator:**

Novartis Pharmaceuticals Corporation

**Counsel for Relator:**

Danny S. Ashby (lead counsel)
O'Melveny & Myers LLP
2801 N. Harwood Street, Suite 1600
Dallas, Texas 75201
(972) 360-1900
dashby@omm.com

Anton Metlitsky
Ross B. Galin
O'Melveny & Myers LLP
7 Times Square
New York, New York 10036
(212) 326-2000

Deron R. Dacus
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
(903) 705-1117

Meredith Garagiola
O'Melveny & Myers LLP
1625 Eye Street
Washington, D.C. 20006
(202) 383-5115

Megan R. Whisler (formerly with O'Melveny & Myers LLP)

**Real Parties in Interest:**

State of Texas
Health Selection Group, L.L.C.

**Counsel for Real Party in Interest the State of Texas:**

Ken Paxton
Brent Webster
Aaron L. Nielson
James Lloyd
Amy S. Hilton
Evan S. Greene (lead counsel)
Jonathan D. Bonilla
Jordan Underhill
Lynne Kurtz-Citrin
Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
(512) 936-1845
evan.greene@oag.texas.gov

**Counsel for Real Party in Interest Health Selection Group, L.L.C.:**

Samuel F. Baxter (co-lead counsel)
Jennifer L. Truelove
McKool Smith, P.C.
104 East Houston, Suite 300
Marshall, Texas 75670
(903) 923-9000
sbaxter@mckoolsmith.com

Eric B. Halper
Radu A. Lelutiu
McKool Smith, P.C.
1301 Avenue of the Americas
New York, New York 10019
(212) 402-9400

Mark Lanier (co-lead counsel)
Harvey Brown
Benjamin Major
Zeke DeRose
Jonathan Wilkerson
The Lanier Firm
10940 W. Sam Houston Pkwy N, Suite 100
Houston, Texas 77064
(800) 723-3216
WML@LanierLawFirm.com

# TABLE OF CONTENTS

Page

Identity of Parties and Counsel ..............................................................ii

Index of Authorities ............................................................................ v

Statement of the Case ......................................................................... ix

Statement of Jurisdiction ..................................................................... x

Issues Presented................................................................................... x

Introduction ....................................................................................... 1

Statement of Facts ............................................................................... 2

    I.   Legal Background ...................................................................... 2

    II.  HSG's lawsuit ........................................................................... 5

Summary of the Argument..................................................................... 6

Argument............................................................................................ 8

    I.   HSG Has Standing to Maintain the Underlying Lawsuit. ........................ 8

        A.   The assignee of a legal claim has standing to assert and obtain
redress for the assignor's injury. .............................................. 8

        B.   *Qui tam* relators are assignees that have standing to assert and
obtain redress for Texas's injuries under the TMFPA. ......................11

    II.  The TMFPA's *Qui Tam* Provisions Do Not Violate the Texas
Constitution................................................................................ 14

        A.   The TMFPA ensures that the Attorney General maintains
ultimate authority over any *qui tam* lawsuit........................... 14

        B.   Novartis's remaining arguments are unavailing............................. 18

    III.  This Case Does Not Warrant Mandamus Relief. ..................................... 24

Prayer............................................................................................... 26

Certificate of Compliance ................................................................... 27

# INDEX OF AUTHORITIES

Page(s)

**Cases:**

*Agey v. American Liberty Pipe Line Co.,*
172 S.W.2d 972 (Tex. 1943) ............................................................... 20, 23

*Bell v. Low Income Women of Tex.,*
95 S.W.3d 253 (Tex. 2002) ........................................................................ 2

*Camp v. Gulf Prod. Co.,*
61 S.W.2d 773 (Tex. 1933) ...................................................................... 19

*City of Houston v. Hous. Prof'l Firefighters Ass'n,*
664 S.W.3d 790 (Tex. 2023) .................................................................... 24

*Dallas Cnty. Mental Health & Mental Retardation v. Bossley,*
968 S.W.2d 339 (Tex. 1998) .................................................................... 14

*Data Foundry, Inc. v. City of Austin,*
620 S.W.3d 692 (Tex. 2021) ...................................................................... 8

*EBS Sols., Inc. v. Hegar,*
601 S.W.3d 744 (Tex. 2020) .................................................................... 15

*El Paso Elec. Co. v. Tex. Dep't of Ins.,*
937 S.W.2d 432 (Tex. 1996) ......................................................... 15, 17, 23

*In re Essex Ins. Co.,*
450 S.W.3d 524 (Tex. 2014) .................................................................... 26

*In re Farmers Tex. Cnty. Mut. Ins. Co.,*
621 S.W.3d 261 (Tex. 2021) .................................................................... 25

*Heckman v. Williamson County,*
369 S.W.3d 137 (Tex. 2012) ................................................................. 8, 9

*Hill County v. Sheppard,*
178 S.W.2d 261 (Tex. 1944) .................................................................... 20

*Holy Cross Church of God in Christ v. Wolf,*
44 S.W.3d 562 (Tex. 2001) ...................................................................... 13

*Hooks v. Fourth Ct. of Appeals,*
808 S.W.2d 56 (Tex. 1991) ...................................................................... 25

*In re Kappmeyer,*
668 S.W.3d 651 (Tex. 2023) ................................................................ 24, 25

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992) .................................................................................. 8

*Malouf v. State ex rels. Ellis*,
694 S.W.3d 712 (Tex. 2024) ............................................................ 26

*Maud v. Terrell*,
200 S.W. 375 (Tex. 1918) .............................................. 15, 18, 19, 23

*McLane Champions, LLC v. Hous. Baseball Partners LLC*,
671 S.W.3d 907 (Tex. 2023) ........................................................ 9, 14

*In re Novartis Pharm. Corp.*,
No. 06-24-00005-CV, 2024 WL 874686 (Tex. App.—
Texarkana 2024, orig. proceeding) ................................................. ix

*Paxton v. Longoria*,
646 S.W.3d 532 (Tex. 2022) ...................................................... 16, 17

*Polansky v. Exec. Health Res. Inc.*,
17 F.4th 376 (3d Cir. 2021) ............................................................. 17

*In re Rogers*,
690 S.W.3d 296 (Tex. 2024) ............................................................ 24

*In re Shire PLC*,
633 S.W.3d 1 (Tex. App.—Texarkana 2021, orig. proceeding) ........................ 26

*S.W. Bell Tel. Co. v. Mktg. on Hold, Inc.*,
308 S.W.3d 909 (Tex. 2010) ....................................... 9, 11, 12, 13

*Sprint Commc'ns Co. v. APCC Servs., Inc.*,
554 U.S. 269 (2008) ...................................................... 9, 10, 11, 12

*Staples v. State*,
245 S.W. 639 (Tex. 1922) ......................................................... 19, 23

*State ex rel. Durden v. Shahan*,
658 S.W.3d 300 (Tex. 2022) ............................................................ 14

*State v. Hollins*,
620 S.W.3d 400 (Tex. 2020) ............................................................ 12

*State v. Lloyd*,
994 S.W.2d 362 (Tex. App.—Waco 1999, no pet.) ................... 15, 17, 18

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*,
852 S.W.2d 440 (Tex. 1993) .............................................................. 8

*Texas Boll Weevil Eradication Foundation, Inc. v. Lewellen*,
952 S.W.2d 454 (Tex. 1997) ............................................................ 21

*U.S. ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*,
41 F.3d 1032 (6th Cir. 1994) ..................................................... 21, 22

*United State ex. rel. Adams v. Chattanooga Hamilton Cnty. Hosp. Auth.*,
  No. 1:21-cv-84, 2024 WL 4784372 (E.D. Tenn. Nov. 7, 2024) ........................ 22

*United States ex rel. Zafirov v. Fla. Med. Assoc., LLC*,
  No. 8:19-cv-01236-KKM-SPF, 2024 WL 4349242
  (M.D. Fla. Sept. 30, 2024) ........................................................................ 22

*Univ. of Tex. at Arlington v. Bishop*,
  997 S.W.2d 350 (Tex. App.—Fort Worth 1999, pet. denied) ........................... 18

*UTHSCSA v. Mata & Bordini, Inc.*,
  2 S.W.3d 312 (Tex. App.—San Antonio 1999, pet. denied) ........................... 18

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*,
  529 U.S. 765 (2000) ........................................ 6, 7, 9, 10, 11, 12, 13, 21, 22, 24

*In re Xerox Corp.*,
  555 S.W.3d 518 (Tex. 2018) ............................... 1, 2, 3, 4, 11, 14, 20, 22

**Constitutional Provisions, Statutes, and Rules:**

42 U.S.C.:

   §§ 1396-1396b ....................................................................................... 2

   § 1396a ................................................................................................ 2

   § 1396h(a) ............................................................................................ 3

   § 1396h(b)(2) ........................................................................................ 3

Tex. Const.:

   art. II, § 1 ........................................................................................... 21

   art. III, § 51-a ........................................................................................ 2

   art. III, § 51-a(a) .................................................................................... 2

   art. III, § 51-a(b) .................................................................................... 2

   art. III, § 51-a(c) .................................................................................... 2

   art. IV, § 22 ......................................................... x, 7, 14, 15, 17, 18, 19, 22

   art. V, § 21 ........................................................... x, 7, 14, 18, 19, 22

Tex. Gov't Code § 22.002(a) ......................................................................... x

Tex. Hum. Res. Code:

   § 32.001 ............................................................................................... 2

   §§ 36.001-.132 ...................................................................................... ix

   § 36.002 ........................................................................................... 3, 4, 6

   § 36.002(1) ............................................................................................ 3

   § 36.002(2)-(13) ..................................................................................... 3

   § 36.007 ............................................................................................... 3

§ 36.051 ............................................................................................................ 3

§ 36.052 ...................................................................................................... 3, 13

§ 36.052(a) ..................................................................................................... 13

§ 36.052(a)(1) ................................................................................................ 12

§ 36.101 ...................................................................................................... 11, 17

§§ 36.101-.117 ................................................................................................. 3

§ 36.101(a) ........................................................... x, 4, 11, 13, 15, 20

§ 36.102 ................................................................................. 17, 21, 23

§ 36.102(a) ..................................................................................................... 16

§ 36.102(a)-(b) ................................................................................................. 4

§ 36.102(b) ................................................................................................... 5, 16

§ 36.102(b)-(c) ........................................................................................... 4, 16

§ 36.102(d) ....................................................................................................... 4

§ 36.102(e) ................................................................................................. 17, 18

§ 36.104 ..................................................................................................... 4, 5

§ 36.104(b) ................................................................................................. 16, 23

§ 36.104(b-1) .......................................................................................... 5, 16, 18

§ 36.107 ................................................................................... 17, 21, 23

§ 36.107(a) ............................................................................................. 5, 16, 23

§ 36.107(b) ..................................................................................................... 21

§ 36.107(b)-(c) ........................................................................................... 5, 16

§ 36.108 ........................................................................................................ 5, 18

§ 36.108(a) ..................................................................................................... 17

§ 36.109 ........................................................................................................... 5

§ 36.109(a) ..................................................................................................... 17

§ 36.109(b) ..................................................................................................... 17

§ 36.110 .................................................................................................... 4, 11

§ 36.112 ....................................................................................................... 21

**Other Authorities:**

Office of Inspector General, U.S. Dep't of Health and Hum. Servs., *State False Claims Act Reviews,* https://oig.hhs.gov/fraud/state-false-claims-act-reviews/ ..................................................................................... 4

## STATEMENT OF THE CASE

| | |
|---|---|
| *Nature and Course of Underlying Proceeding*: | Health Selection Group L.L.C. ("HSG") sued Novartis Pharmaceuticals Corporation under the *qui tam* provisions of the Texas Medicaid Fraud Prevention Act ("TMFPA"). MR.1-59.[1] Novartis filed a combined plea to the jurisdiction and Rule 91a motion to dismiss, contending that HSG lacks standing and that the *qui tam* provisions otherwise are unconstitutional. MR.61-95. |
| *Respondent*: | 71st Judicial District Court, Harrison County<br>The Honorable Brad Morin |
| *Respondent's Challenged Action*: | The trial court denied the motion. MR.167. |
| *Court of Appeals*: | Sixth Court of Appeals |
| *Proceedings in the Court of Appeals*: | Novartis filed a petition for writ of mandamus on February 2, 2024. The court of appeals denied the petition. MR.496-501; *In re Novartis Pharm. Corp.*, No. 06-24-00005-CV, 2024 WL 874686 (Tex. App.—Texarkana 2024, orig. proceeding) (per Stevens, C.J., joined by van Cleef and Rambin, JJ.). |

---

[1] Although the relevant chapter of the Human Resources Code has been renamed the "Texas Health Care Program Fraud Prevention Act," *see* Tex. Hum. Res. Code §§ 36.001-.132, the State continues to refer to the TMFPA to remain consistent with the parties' earlier briefing below and in this Court.

## Statement of Jurisdiction

The Court has jurisdiction under Texas Government Code section 22.002(a).

## Issues Presented

The *qui tam* provisions of the TMFPA authorize a private person to bring a civil action for a violation of the Act "in the name of the person and of the state." Tex. Hum. Res. Code § 36.101(a). HSG filed a lawsuit under those provisions, contending that Novartis secured improper payments from the Texas Medicaid program in connection with the unlawful marketing of Novartis's drugs. Novartis moved to dismiss the lawsuit, arguing that HSG lacks standing and that the *qui tam* provisions otherwise are unconstitutional because they authorize a private person to represent the State in court proceedings. The trial court denied the motion. Novartis then sought a writ of mandamus seeking the same relief in the Sixth Court of Appeals. That petition was denied, too. The issues presented are:

1. Whether the trial court abused its discretion in concluding that HSG has standing to maintain its TMFPA claims.

2. Whether the trial court abused its discretion in concluding that the *qui tam* provisions satisfy article IV, section 22, and article V, section 21 of the Texas Constitution.

3. Whether mandamus relief is appropriate when Novartis can appeal the denial of its motion to dismiss after final judgment is entered in this suit.

## Introduction

"[T]he limited time and financial resources of governmental regulators . . . and the increasing sophistication of Medicaid scams make chicanery difficult to uncover." *In re Xerox Corp.*, 555 S.W.3d 518, 525 (Tex. 2018) (orig. proceeding). Because Medicaid funds are limited, too, every dollar that's paid out to such fraudsters is a dollar that could have been spent to provide healthcare for the neediest Texans.

To help combat these schemes and preserve State funds, the TMFPA includes *qui tam* provisions that incentivize and deputize private whistleblowers to pursue fraud claims on the State's behalf. In the nearly thirty years that those provisions have been in effect, private citizens have assisted the State in deterring and remediating Medicaid fraud—to the tune of roughly $2 billion. But here, Novartis seeks to undo the Act's highly successful public-private partnership, contending that *qui tam* plaintiffs (like HSG) lack standing and that the challenged laws otherwise are unconstitutional for authorizing private persons to represent the State in court. Novartis is wrong on both counts.

First, HSG has standing to maintain its lawsuit as an assignee of Texas's right to redress under the TMFPA. The U.S. Supreme Court so held in an indistinguishable case recognizing a private citizen's ability to maintain federal False Claims Act claims vindicating the United States's injuries. Second, the *qui tam* provisions are constitutional because they explicitly preserve the Attorney General's authority to take over and otherwise control any *qui tam* suit brought on behalf of the State. Novartis's concern about private actors supplanting State interests via these lawsuits is unfounded. The Court should deny the petition.

## STATEMENT OF FACTS

The court of appeals correctly stated the nature of the case. *See supra* p. ix.

## I.   Legal Background

**A.**   Article III, section 51-a of the Texas Constitution authorizes the Legislature to provide "assistance grants" for "needy" persons, including "needy dependent children" and persons who are "disabled because of a mental or physical handicap." Tex. Const. art. III, § 51-a(a). Such "assistance" specifically includes funding for "medical care, rehabilitation and other similar services." *Id.* § 51-a(b).

Pursuant to that authority, in 1967, the Texas Legislature enacted the State's "Medical Assistance Program," which "enable[s] the state to provide medical assistance on behalf of needy individuals." Tex. Hum. Res. Code § 32.001. The program additionally permits Texas to participate in the federal Medicaid program, which offers matching federal funds to States that implement indigent-health-service programs meeting certain standards. *Bell v. Low Income Women of Tex.*, 95 S.W.3d 253, 255-56 (Tex. 2002) (citing 42 U.S.C. §§ 1396-1396b); *see also* Tex. Const. art. III, § 51-a(c) ("[T]he Legislature is specifically authorized and empowered to . . . enact such laws as may be necessary in order that such federal matching money will be available for assistance and/or medical care for or on behalf of needy persons.").

Because Medicaid resources are limited, however, "fraud, abuse, and waste [necessarily] divert funds that could otherwise be used to provide essential health-care services" for needy persons. *Xerox*, 555 S.W.3d at 524; *see also* 42 U.S.C. § 1396a (requiring participating States to implement measures to curb "fraud, waste, and abuse" in the Medicaid program).

2

To combat those diversions, in 1995, the Legislature enacted the TMFPA, which created a "state enforcement action" authorizing relief against any person who defrauds the Texas Medicaid program through defined "unlawful act[s]." *Xerox*, 555 S.W.3d at 522; Tex. Hum. Res. Code §§ 36.002, 36.051. The Act prohibits "knowingly mak[ing] or caus[ing] to be made a false statement or misrepresentation of a material fact . . . to receive a benefit or payment under a health care program that is not authorized or that is greater than the benefit or payment that is authorized," Tex. Hum. Res. Code § 36.002(1), along with twelve other similar fraudulent acts, *id.* § 36.002(2)-(13). The TMFPA authorizes the State to recover a slew of "civil remedies" from violators—including disgorgement of improper overpayments, interest, and other penalties. *Id.* §§ 36.007, 36.052. All told, the Court has recognized that the Act serves as "a powerful tool for targeting fraud against the Texas Medicaid program and securing the program's integrity." *Xerox*, 555 S.W.3d at 525.

**B.** To provide additional protection against Medicaid fraud, the Texas Legislature added *qui tam* whistleblower provisions to the TMFPA in 1997. Tex. Hum. Res. Code §§ 36.101-.117. Besides providing the State with assistance in rooting out fraud, those provisions allow Texas to qualify for a 10% bonus from the federal government for any Medicaid award the State secures. *See* 42 U.S.C. § 1396h(a), (b)(2) (requiring States to implement whistleblower laws that are "at least as effective in rewarding and facilitating qui tam actions for false or fraudulent [Medicaid] claims as those described in [the federal False Claims Act]"); *see also Xerox*, 555 S.W.3d at

538 ("[S]tates with *qui tam* laws meeting specified federal standards can retain an additional ten percent of Medicaid recoveries.").[2]

Under Texas's *qui tam* provisions, a private plaintiff (the *qui tam* relator) may bring a civil action for a violation of section 36.002 "in the name of the person and of the state." Tex. Hum. Res. Code § 36.101(a); *see also Xerox*, 555 S.W.3d at 525 (noting that the *qui tam* provisions "deputize[] private citizens to pursue a TMFPA action on the government's behalf."). The private plaintiff ultimately may recover a percentage of any proceeds awarded to the State via the lawsuit. Tex. Hum. Res. Code § 36.110.

But the Act includes several provisions designed to ensure that the State maintains control over these suits. First, before serving the defendant, the suit must be filed *in camera* and served on the Attorney General along with "a written disclosure of substantially all material evidence and information the person possesses" supporting the claims. *Id.* § 36.102(a)-(b). The Attorney General then has 180 days to review those materials. *Id.* §§ 36.102(b)-(c), 36.104. At that point, the Attorney General has two options: He may intervene in the action or decline to take over principal responsibility for the suit. *Id.*[3] During the review period, the suit remains under seal, and

---

[2] The TMFPA's *qui tam* provisions currently qualify for the federal bonus. *See* Office of Inspector General, U.S. Dep't of Health and Hum. Servs., *State False Claims Act Reviews,* https://oig.hhs.gov/fraud/state-false-claims-act-reviews/ (describing requirements and listing States that are approved for the federal bonus).

[3] The Attorney General also may move to extend the 180-day deadline for "good cause shown." *Id.* § 36.102(d).

the petition cannot be served on the defendant until the court orders service. *Id.* § 36.102(b).

If the Attorney General decides to intervene, he bears "the primary responsibility for prosecuting the action," leaving the *qui tam* relator with limited rights to continue as a party. *Id.* § 36.107(a). The Attorney General then may prosecute, dismiss, or settle the action "notwithstanding the objections" of the *qui tam* relator. *Id.* § 36.107(b)-(c).

If the Attorney General "declines to take over the action," on the other hand, he still enjoys the right to oversee and ultimately take over the lawsuit if necessary. *Id.* § 36.104. On request, the Attorney General must be served with all pleadings filed in the action and provided with copies of all deposition transcripts. *Id.* § 36.104(b-1). Based on receipt of that information or otherwise, the Attorney General then may intervene after the original 180-day deadline "on a showing of good cause." *Id.* In addition to this right to intervene later, the Attorney General may move to stay discovery in the *qui tam* action if discovery would interfere with the State's own investigation or prosecution of a related matter. *Id.* § 36.108. The Attorney General may also pursue an alternative remedy in a separate proceeding that can become conclusive on all parties in the *qui tam* action. *Id.* § 36.109.

## II. HSG's lawsuit

HSG filed the underlying lawsuit contending that Novartis had "fraudulently engaged in unlawful marketing schemes and illegally reaped hundreds of millions of dollars from Texas Medicaid" relating to its promotion of certain drugs. MR.2. HSG asserted that Novartis committed multiple "unlawful acts," as defined under section

36.002 of the TMFPA, including "knowingly induc[ing] doctors to prescribe . . . its products" so that Novartis could receive improper payments under the Texas Medicaid program. MR.56-57. HSG sought recovery of the improper payments, statutory penalties, interest, and other fees "on behalf of Texas," along with its "Relator's share as provided by the TMFPA." MR.57-58.

In turn, Novartis filed a joint plea to the jurisdiction and motion to dismiss contending that HSG lacks standing to maintain its suit and that the TMFPA's *qui tam* provisions otherwise are unconstitutional in authorizing private parties to represent the State in court. MR.61-95. HSG responded, MR.98-115, and the State, which had declined to intervene in the underlying suit, also submitted a statement of interest supporting HSG's suit, MR.116-38. Upon consideration of the parties' briefing and oral argument, the trial court issued an order denying Novartis's motion. MR.167.

Novartis then filed a petition for a writ of mandamus raising the same arguments and seeking dismissal of HSG's lawsuit in the Sixth Court of Appeals. MR.170-247. The court of appeals issued an order and judgment denying Novartis's petition. MR.496-501.

## Summary of the Argument

**I.** HSG has standing to maintain its *qui tam* suit as an assignee of Texas's rights under the TMFPA. Although the standing requirements ordinarily require the complainant to assert her own injury, federal and Texas law have long recognized that an injured person lawfully may assign her right to recovery to another person. Once a valid assignment has occurred, the assignee steps into the shoes of the assignor and has standing to litigate any claim that the assignor could have maintained. In *Vermont*

6

*Agency of Natural Resources v. United States ex rel. Stevens*, the U.S. Supreme Court applied this principle in a directly analogous federal False Claims Act case, holding that a private *qui tam* plaintiff had assignee-standing to maintain fraud claims vindicating the United States's injuries even though the plaintiff suffered no injury himself. 529 U.S. 765, 771-74 (2000).

Because the TMFPA similarly assigns Texas's rights under the Act to private persons, a *qui tam* plaintiff like HSG has assignee-standing to maintain TMFPA claims. That HSG suffered no injury itself is irrelevant: It is suing to rectify Texas's injuries, which indisputably would confer standing on the State to maintain this lawsuit. Texas's injuries serve as an adequate basis for HSG's standing.

**II.** The TMFPA's *qui tam* provisions also comport with article IV, section 22, and article V, section 21 of the Texas Constitution. Those provisions generally require state attorneys to represent the State in court. But this Court has held that the Legislature may authorize a state agency to obtain private counsel so long as the counsel's authority is subordinate to the relevant state attorney.

The TMFPA easily satisfies that standard. At the outset, the Act provides the Attorney General with the opportunity to assume principal command over any *qui tam* suit that is filed on behalf of the State. If the Attorney General takes over the lawsuit, he may prosecute, dismiss, or settle the case over the objection of the *qui tam* relator. If the Attorney General declines to take over the action, he still enjoys the right to updates regarding the case along with the ability to intervene if necessary. Far from supplanting the Attorney General's authority to represent the State, the TMFPA preserves it at every juncture.

**III.** Mandamus relief is wholly unwarranted in this case. The trial court correctly denied Novartis's motion to dismiss. No case even remotely supports invalidating the nearly thirty-year-old *qui tam* provisions at issue here. But even if the trial court was wrong, Novartis has an adequate remedy by appeal. Novartis failed to point to any extraordinary circumstances supporting a right to bypass the ordinary appellate process.

## ARGUMENT

## I. HSG Has Standing to Maintain the Underlying Lawsuit.

### A. The assignee of a legal claim has standing to assert and obtain redress for the assignor's injury.

**1.** Standing is a constitutional prerequisite to maintaining a lawsuit under both federal and Texas law. *Heckman v. Williamson County*, 369 S.W.3d 137, 150-51 & n.60 (Tex. 2012). To assess standing, this Court has "adopted the federal requirements…as set forth by the United States Supreme Court." *Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 696 (Tex. 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) (plurality op.)). Thereunder, a plaintiff must show: "(1) an injury in fact that is both concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the defendant's challenged action; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* Having adopted the federal standard, this Court "look[s] to the more extensive jurisprudential experience of the federal courts on [standing] for any guidance it may yield." *Heckman*, 369 S.W.3d at 151 n.60 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993)).

To that end, the U.S. Supreme Court has explained that the standing requirements ordinarily ensure that the judicial power "exists only to redress or otherwise to protect against injury to *the complaining party*." *Stevens*, 529 U.S. at 771; *accord Heckman*, 369 S.W.3d at 155 ("[O]ur Constitution opens the courthouse doors only to those who have or are suffering an injury.").

**2.** Nonetheless, an injured person lawfully may assign her right to recovery to another person. *See*, *e.g.*, *McLane Champions, LLC v. Hous. Baseball Partners LLC*, 671 S.W.3d 907, 911-13 (Tex. 2023). And courts have "long found ways to allow assignees [of legal rights] to bring suit" to rectify injuries suffered by their assignors. *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 285 (2008). As this Court has explained, an assignee "is considered under the law to have suffered the same injury as the assignor[] and ha[s] the same ability to pursue the claims." *S.W. Bell Tel. Co. v. Mktg. on Hold, Inc.*, 308 S.W.3d 909, 916 (Tex. 2010). Consequently, an assignee has standing to maintain legal claims whenever the assignor would satisfy the standing test. *Id.*

Assignee standing applies even when the government is the injured party that assigns its claims to a private party. To wit, in *Stevens*, the U.S. Supreme Court considered "whether a private individual [could] bring suit . . . on behalf of the United States . . . under the [*qui tam* provisions of the] False Claims Act" when it was undisputed that the individual suffered no harm and was asserting only "an injury to the United States." 529 U.S. at 768, 771. Those injuries included the "injury to [the United States's] sovereignty arising from violation of its laws" along with the United States's "proprietary injury resulting from the alleged fraud." *Id.* at 771. To satisfy

standing requirements, *Stevens* explained, the *qui tam* relator's interest in the lawsuit "must consist of obtaining compensation for[] or preventing" the government's injuries, as contrasted with someone who had simply "placed a wager upon the outcome" of the lawsuit. *Id.* at 772.

Employing that reasoning, the Court found an "adequate basis for the relator's suit . . . in the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Id.* at 772-73. The Court observed that it had "routinely entertained" such assignee suits—implicitly, through the guise of "representational standing." *Id.* at 773. And because the private relator held a valid assignment of the United States's rights under the *qui tam* provisions of the False Claims Act, "the United States's injury in fact suffice[d] to confer standing on [him]." *Id.* at 774.

Eight years later, the Court reaffirmed *Stevens* and reiterated that "where assignment is at issue, courts . . . have *always* permitted the party with legal title alone to bring suit." *Sprint Commc'ns*, 554 U.S. at 285 (emphasis added). It held that assignees of payphone operators' rights under the federal Communications Act had standing to bring claims arising from the operators' injuries even though the assignees "did not originally suffer any injury" themselves and otherwise intended to remit the proceeds of the litigation to the assignors. *Id.* at 271, 286. The Court explained that the assignee-standing inquiry does not turn on the specific legal claim assigned to the plaintiff or "what the plaintiff ultimately intends to do with the money he recovers." *Id.* at 287. Simply put, an assignee "may properly bring suit to redress the injury originally suffered by his assignor." *Id.*

10

Guided by federal precedent, this Court recognizes assignee standing under the same reasoning set forth in *Stevens* and *Sprint Communications*. In *Southwestern Bell Telephone*, the Court held that a phone-bill auditor had standing to bring claims assigned to the auditor by Southwestern Bell's customers—notwithstanding that the auditor did not suffer its own injury. 308 S.W.3d at 916. As the Court explained, "[b]ecause STA holds . . . valid assignments, STA steps into the shoes of the claimholders." *Id.*

### B. *Qui tam* relators are assignees that have standing to assert and obtain redress for Texas's injuries under the TMFPA.

1. Section 36.101 of the TMFPA authorizes a private person to bring an action for civil remedies against any person who defrauds defined Texas health-care programs. Tex. Hum. Res. Code § 36.101(a). The action is brought "for the person and for the state" and "shall be brought in the name of the person and of the state." *Id.* The private plaintiff ultimately is entitled to recover a percentage of any proceeds due to the State, which percentage differs depending on whether the State intervenes and how the action otherwise proceeds. *Id.* § 36.110.

This Court has recognized that the TMFPA's *qui tam* provisions effectively "deputize[] private citizens to pursue a TMFPA action *on the government's behalf*." *Xerox*, 555 S.W.3d at 525 (emphasis added). In other words, like private relators under the federal False Claims Act, a TMFPA *qui tam* relator is "suing as a *partial* assignee" of the government's claims to rectify the government's injuries. *Stevens*, 529 U.S. at 773 n.4.

Consequently, a *qui tam* relator, like HSG here, has assignee-standing to maintain TMFPA claims to redress injuries suffered by the State of Texas. As in *Stevens*, those injuries include the proprietary injury resulting from the fraud, *see* Tex. Hum. Res. Code § 36.052(a)(1) (authorizing recovery of "the amount of any payment . . . provided under a health care program . . . as a result of the unlawful act"), as well as the injury to Texas's sovereignty resulting from the violation of its laws, *cf. Stevens*, 529 U.S. at 771; *cf. also State v. Hollins*, 620 S.W.3d 400, 410 (Tex. 2020) (per curiam) (explaining that "*ultra vires* conduct automatically results in harm to the sovereign as a matter of law"). That HSG "d[id] not allege that it personally suffered any injury from the conduct alleged in the petition," Novartis Br. 16, is of no moment because the TMFPA assigns Texas's rights (and corresponding injuries) to private plaintiffs like HSG. Per *Stevens* and *Southwestern Bell Telephone*, that assignment satisfies *constitutional* limits on standing, *supra* pp. 9-11, not just the statutory prerequisites to bringing an action under the TMFPA, *cf.* Novartis Br. 17-18.

**2.**    Against this backdrop, Novartis attempts to distinguish *Stevens*, contending that its "logic . . . does not apply" because the TMFPA provides for civil penalties as opposed to damages. *Id.* at 19. But there's no daylight between *Stevens* and this case. *Stevens* did not turn on the specific type of claim assigned by the government to the private plaintiff or the related remedy. The assignee-standing inquiry instead is based on the assignor's *injury*. As *Stevens* explained, when the government assigns a claim designed to "compensat[e] for" or "prevent[]" the violation of its rights, the assignee naturally "has standing to assert *the injury in fact* suffered by the assignor." 529 U.S. at 772-73 (emphasis added); *see also Sprint Commc'ns*, 554 U.S. at

12

286 ("[A]n assignee can sue based on his assignor's *injuries*." (emphasis added)); *S.W. Bell*, 308 S.W.3d at 916 ("[An assignee] is considered under the law to have suffered the same *injury* as the assignors." (emphasis added)). Put simply, if the assignor has standing to rectify an injury, then the assignee has standing, too.

Here, the Texas Legislature determined that an action for civil remedies would compensate for and prevent fraudulent acts committed against the State's health care programs. Tex. Hum. Res. Code § 36.052(a). Therefore, an assignee of such a claim, like HSG under section 36.101(a), has standing to assert and obtain redress for the State's injuries. It's no different than if the State had opted to pursue the civil-remedies claim itself. *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 572 (Tex. 2001) ("[A]n assignee stands in the shoes of his assignor."). Because the State indisputably would have standing to maintain the claims asserted in the underlying lawsuit, HSG has standing, too.

Implicitly recognizing that *Stevens* controls, Novartis last contends that a "sovereign remedy" like civil penalties "cannot be 'assigned' to private litigants." Novartis Br. 21. Novartis cites nothing to support that proposition. And it cannot be squared with *Stevens* itself, which confirmed that a private plaintiff could sue to rectify "the injury to [the United States's] sovereignty arising from violation of its laws." 529 U.S. at 771. In all events, the civil remedies authorized under section 36.052—including the amount of any payment provided due to the fraud, interest, and various cash penalties, Tex. Hum. Res. Code § 36.052(a)—also rectify the "proprietary injury" inflicted on the State, *Stevens*, 529 U.S. at 771; *cf.* Novartis Br. 22 (acknowledging that "[t]he government may partially assign a claim vindicating its

13

proprietary interest just like anyone else can"). Even if the statutorily authorized civil remedies are not "damages" per se, *Xerox*, 555 S.W.3d at 527, they nonetheless alleviate Texas's pocketbook injury—and therefore can be assigned under Novartis's own argument.

At bottom, the "real substance" of Novartis's standing argument, *cf. Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998), is that the TMFPA's assignment provisions are void for violating the "separation of powers," Novartis Br. 22. That argument is wrong for the reasons set forth below. *Infra* pp. 14-24. And it has no bearing on the standing analysis. *See McLane Champions*, 671 S.W.3d at 913 ("[A] plaintiff does not lack standing simply because some other legal principle may prevent it from prevailing on the merits.").

Because the Texas Legislature partially assigned Texas's rights under the TMFPA to *qui tam* relators, HSG has standing to assert and rectify Texas's injuries.

## II. The TMFPA's *Qui Tam* Provisions Do Not Violate the Texas Constitution.

### A. The TMFPA ensures that the Attorney General maintains ultimate authority over any *qui tam* lawsuit.

**1.** Article IV, section 22, and article V, section 21 of the Texas Constitution allocate representational authority for the State in the state courts among the Attorney General, district attorneys, and county attorneys. *State ex rel. Durden v. Shahan*, 658 S.W.3d 300, 303 (Tex. 2022) (per curiam). Based on these provisions, the Court has explained that the Legislature cannot "*divest* these officials of their collective constitutional authority" by shifting representational power to some other attorney.

14

*El Paso Elec. Co. v. Tex. Dep't of Ins.*, 937 S.W.2d 432, 439 (Tex. 1996) (emphasis added).

At the same time, *El Paso Electric* made clear that "the Legislature may authorize an agency to retain private counsel to prosecute [an] action[], as long as such counsel's authority is subordinate" to that of the relevant state attorney. *Id.* (citing *Maud v. Terrell*, 200 S.W. 375, 376 (Tex. 1918)). The Court also confirmed that the ordinary presumption of constitutionality applies to any statute that delegates representational authority for the State to outside counsel. *Id.* As such, "a statute authorizing an agency to hire outside counsel should, if possible, be construed as complying with [article IV, section 22 of the Texas Constitution], even if the statute does not expressly recognize the authority of the Attorney General." *Id.*; *see also EBS Sols., Inc. v. Hegar*, 601 S.W.3d 744, 754 (Tex. 2020) ("[I]f a statute is susceptible to two interpretations . . . then the constitutional [one] will prevail.").

Under these standards, a statute authorizing private counsel to represent the State does not violate the Texas Constitution "unless it 'unequivocally supplant[s]' the . . . Attorney[]General in [his] authority to prosecute the suits of the State." *State v. Lloyd*, 994 S.W.2d 362, 364 (Tex. App.—Waco 1999, no pet.) (alterations in original) (quoting *El Paso Elec.*, 937 S.W.2d at 439).

**2.** The *qui tam* provisions of the TMFPA easily satisfy this forgiving constitutional standard because they *explicitly* preserve the Attorney General's authority over the prosecution of any TMFPA lawsuit filed on behalf of the State.

As discussed above, section 36.101(a) of the Act authorizes a private person to bring a civil action to rectify fraudulent acts committed against Texas health-care

15

programs "in the name of the person and of the state." *Supra* p. 11. Any person bringing such an action must initially serve a copy of the petition along with "a written disclosure of substantially all material evidence and information the person possesses" on the Attorney General. Tex. Hum. Res. Code § 36.102(a). The Attorney General then has 180 days to elect to intervene and "proceed with the action" himself. *Id.* § 36.102(b)-(c). In the meantime, the petition is filed *in camera* and remains under seal for the 180-day period or until the Attorney General decides to intervene, whichever is earlier. *Id.* § 36.102(b). The petition cannot be served on the defendant until the court orders service. *Id.*

If the Attorney General opts to proceed with the action, he takes over "primary responsibility" for handling it. *Id.* § 36.107(a). He then may prosecute, dismiss, or settle the action "notwithstanding the objections" of the *qui tam* relator. *Id.* § 36.107(b)-(c).

But even if the Attorney General "declines to take over the action" within the 180-day period, *id.* § 36.104(b), he still retains control over the lawsuit. To begin, the Attorney General is "entitled" to copies of all pleadings filed, along with copies of deposition transcripts. *Id.* § 36.104(b-1). Based on receipt of that information or otherwise, the Attorney General may choose to intervene in the action *after* the initial 180-day period has expired. *See id.* (requiring "a showing of good cause" for subsequent intervention).[4] The Attorney General may also stay the private relator's ability

---

[4] To the extent the "good cause" requirement imposes any meaningful barrier to subsequent intervention, it can and therefore should be interpreted liberally to support the constitutionality of the *qui tam* provisions. *See Paxton v. Longoria*, 646

to conduct discovery upon showing that the lawsuit is interfering with "the state's investigation or prosecution of a criminal or civil matter arising out of the same facts." *Id.* § 36.108(a). The action also cannot be dismissed without the consent of the Attorney General, *id.* § 36.102(e)—so he retains veto authority over any proposed settlement.

Moreover, "[n]otwithstanding [s]ection 36.101" (which authorizes a *qui tam* action), the State may elect to pursue its claim through "any alternate remedy available to the state." *Id.* § 36.109(a). And the State's alternate proceeding can become "conclusive" for all parties to any *qui tam* action proceeding under section 36.101. *Id.* § 36.109(b).

**3.** As these provisions demonstrate, the TMFPA ensures that the Attorney General may exercise his constitutional authority to represent the State in court. From the very outset, the Attorney General may choose to take over a *qui tam* action himself. *Id.* §§ 36.102, 36.107. When a statutory scheme expressly provides the State with that option, it necessarily comports with article IV, section 22. *El Paso Elec. Co.*, 937 S.W.2d at 439; *see also Lloyd*, 994 S.W.2d at 366 ("Under the Workers' Compensation Act, the State may pursue a subrogation claim in its own name or the

S.W.3d 532, 539 (Tex. 2022) ("Under the canon of constitutional avoidance, we should, if possible, interpret a statute in a manner that avoids constitutional infirmity." (quotation marks omitted)). Adopting a liberal construction would also be consistent with federal caselaw interpreting the federal False Claim Act's "good cause" requirement for governmental intervention. *See Polansky v. Exec. Health Res. Inc.,* 17 F.4th 376, 387 (3d Cir. 2021) ("[S]howing 'good cause' is neither a burdensome nor unfamiliar obligation.").

employee's name. Thus, the Act does not unequivocally supplant the Attorney General in his authority to prosecute the suits of the State." (cleaned up)); *accord UTHSCSA v. Mata & Bordini, Inc.*, 2 S.W.3d 312, 318 (Tex. App.—San Antonio 1999, pet. denied) (holding that "a third-party action, in which the Attorney General apparently *elected not to participate*" did not violate the separation of powers (emphasis added)); *Univ. of Tex. at Arlington v. Bishop*, 997 S.W.2d 350, 354-55 (Tex. App.—Fort Worth 1999, pet. denied) (same).

But even when the Attorney General opts to remain on the sidelines, he still may stay the relator's ability to conduct discovery that would interfere with the State's own investigation, Tex. Hum. Res. Code § 36.108, demand ongoing information about the action and intervene after the initial 180-day period expires, *id.* § 36.104(b-1), and control any proposed settlement, *id.* § 36.102(e). Simply put, the *qui tam* relator serves at the State's discretion and may proceed with a TMFPA action only as the Attorney General sees fit.

Far from "unequivocally supplant[ing]" the Attorney General's authority, *Lloyd*, 994 S.W.2d at 364, the TMFPA preserves it at every turn. As such, the challenged provisions comport with article IV, section 22, and article V, section 21 of the Texas Constitution.

## B. Novartis's remaining arguments are unavailing.

1. The key separation-of-powers cases that Novartis cites (at 27-32) support the constitutionality of the challenged TMFPA provisions. To begin, the "foundational case" of *Maud v. Terrell*, Novartis Br. 27, *upheld* a law authorizing the Comptroller to "sue for and collect" taxes because the statute did not "by plain and

unambiguous language . . . deprive[] the county attorneys and the Attorney General of their authority to prosecute in the court suits by the State for the recovery of inheritance taxes," 200 S.W. at 376. As the Court explained, because the statute did "not *exclude the idea*" that the Comptroller's ability to "sue for" taxes "shall be in subordination to the authority of the county attorney," *id.* at 377 (emphasis added), it was constitutional. To hold otherwise, according to the Court, a statute would have to explicitly "*deny* to county attorneys or the Attorney-General the right to conduct suits." *Id.* (emphasis added); *see also Camp v. Gulf Prod. Co.*, 61 S.W.2d 773, 777 (Tex. 1933) ("There is nothing in the instant act to indicate any purpose or intention to curtail or abridge any . . . duty . . . imposed by the Constitution . . . upon . . . the Attorney General to represent the interest of the state."). As shown above, however, the TMFPA *expressly* ensures that the Attorney General maintains the authority to conduct and control any *qui tam* action. Nothing in the Act even remotely *denies* the Attorney General such power.

*Staples v. State*, 245 S.W. 639 (Tex. 1922), also supports the constitutionality of the TMFPA. Like the TMFPA, *Staples*'s challenged law authorized private persons to initiate *quo warranto* suits "in the name of the state of Texas" and "in their own names" to prevent the placement of a candidate's name on a ballot. *Id.* Citing *Maud*, the Court held that the statute satisfied article IV, section 22, and article V, section 21, because it could be construed to preserve the state attorneys' authority by requiring the private citizen to present and receive approval for the suit from the relevant officers before it was filed. *Id.* at 642-43. As discussed above, the TMFPA explicitly

ensures that the Attorney General can exercise his prosecutorial discretion before the case is served on the defendant and while it proceeds. *Supra* pp. 17-18.

Novartis also points to *Agey v. American Liberty Pipe Line Co.*, but there, the Court held that the challenged statute did *not* authorize an individual to file suit on behalf of the State, 172 S.W.2d 972, 974 (Tex. 1943), which the TMFPA plainly does, Tex. Hum. Res. Code § 36.101(a). Consequently, the Court did not reach the constitutional question presented in this case. *Agey*, 172 S.W.2d at 974-75.

Finally, *Hill County v. Sheppard*, 178 S.W.2d 261 (Tex. 1944) (orig. proceeding), is inapposite. The Court held that the Legislature could not establish a statutory office for a criminal district attorney that would supplant the extant county attorney's duties. *Id.* at 264 ("We think that it is well settled that since the Constitution imposed certain duties upon the county attorney, the Legislature, in the absence of other constitutional authority therefor, could not create a statutory office with power to take over and exercise such functions."). The TMFPA creates no statutory office. Neither does it supplant the Attorney General's authority in any way. As this Court recognized, the Act instead "imbues the attorney general with broad investigative and enforcement authority and . . . deputizes private citizens to [litigate] on the government's behalf." *Xerox*, 555 S.W.3d at 525.

At bottom, the Court's precedents do not "teach" that private individuals must be "employed" by the State to pursue a lawsuit on behalf of the State. *Cf.* Novartis Br. 32; *see also id.* at 33-34 (contending that "[w]here the Attorney General . . . decide[s] that a case is not worth litigating on behalf of the State of Texas, that [must be] the end of the matter"). For over a century, this Court instead has held that a

20

statute delegating the power to represent the State to a private person is constitutional unless it patently negates the Attorney General's superior authority to represent the State in court. *Supra* pp. 14-15. The TMFPA does no such thing.

2. Novartis additionally points to *Texas Boll Weevil Eradication Foundation, Inc. v. Lewellen*, but plaintiffs there challenged a delegation of *legislative power* to a private entity under article II, section 1 of the Texas Constitution, 952 S.W.2d 454, 465-66 (Tex. 1997). No similar claim is at issue here, and Novartis made no effort to address the Court's eight-factor private-delegation test. *Cf. id.* at 472.

Novartis's related concern about "self-interested private actors" taking actions "repugnant to the public interest" via the TMFPA, Novartis Br. 36-37, is overblown because the Act ensures that the Attorney General may review, take over, and otherwise control the lawsuit from its inception, Tex. Hum. Res. Code §§ 36.102, 36.107. Indeed, the Attorney General can dismiss a meritless action over the objection of the *qui tam* relator, *id.* § 36.107(b), and the Act even provides defendants with the ability to obtain an award if a frivolous action is filed against them, *id.* § 36.112. As discussed above, *Stevens* blessed the federal False Claims Act notwithstanding similar concerns to those Novartis raises here. 529 U.S. at 772 (authorizing the *qui tam* relator to pursue a "bounty" on behalf of the United States); *id.* at 801 (Stevens, J., dissenting) (observing that the federal *qui tam* provisions would have satisfied any Article II challenge requiring the President to enforce the laws);[5] *see also U.S. ex rel.*

---

[5] All nine justices on the U.S. Supreme Court agreed that the private *qui tam* plaintiff had standing in *Stevens*. The two dissenting justices would also have held that States

21

*Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1041 (6th Cir. 1994) ("The qui tam provisions adopted by Congress do not contradict the constitutional principle of separation of powers. Rather, they have been crafted with particular care to maintain the primacy of the Executive Branch in prosecuting false-claims actions, even when the relator has initiated the process.").[6] Novartis's "liberty" hardly is jeopardized, *cf.* Novartis Br. 35, by a statute designed to enable private persons to assist the State with rooting out fraud and other "chicanery," *Xerox*, 555 S.W.3d at 525.

**3.** Novartis further suggests that a "saving construction" cannot salvage the TMFPA, Novartis Br. 38-39, but constitutional avoidance is unnecessary here. Although the Court is required to construe the TMFPA to preserve its constitutionality, *supra* p. 15, there is no need to resort to tools of statutory construction because the Act plainly ensures that the Attorney General may control the lawsuit from the

---

could be sued under the federal False Claims Act. *See Stevens*, 529 U.S. at 789-802 (Stevens, J., dissenting).

[6] One recent outlier federal district court decision held that the federal False Claims Act's *qui tam* provisions violate the U.S. Constitution's Appointments Clause by improperly appointing private relators as officers of the United States. *United States ex rel. Zafirov v. Fla. Med. Assoc., LLC*, No. 8:19-cv-01236-KKM-SPF, 2024 WL 4349242 (M.D. Fla. Sept. 30, 2024). There is no analogous "appointments" claim in this lawsuit, which instead is based on article IV, section 22, and article V, section 21 of the Texas Constitution. Moreover, *Zafirov* already has been criticized by another federal district court. *See United State ex. rel. Adams v. Chattanooga Hamilton Cnty. Hosp. Auth.*, No. 1:21-cv-84, 2024 WL 4784372, at *3 (E.D. Tenn. Nov. 7, 2024) ("A single, outlier trial-court decision that whistles past precedent . . . provides no basis to ignore that precedent here.").

moment the relator files it, Tex. Hum. Res. Code §§ 36.102, 36.107. This Court upheld the challenged statutes in *Maud* and *Staples* even though the laws did *not* explicitly preserve the Attorney General's representational authority, *supra* pp. 18-20, as the TMFPA does here. Novartis's repeated contention that private actors cannot maintain a suit on behalf of the State, Novartis Br. 38-39, cannot be squared with *El Paso Electric* and the Court's antecedent caselaw. So long as the Attorney General is not unequivocally supplanted—and he is not—the statute is constitutional.

**4.** Finally, Novartis belittles the statutory protections that apply (at 42-44) when the Attorney General "declines to take over the action" within the initial 180-day period. Tex. Hum. Res. Code § 36.104(b). Of course, those provisions apply only when the Attorney General opts *not* to assume "primary responsibility for prosecuting the action" from the outset. *Id.* § 36.107(a). That initial opportunity to assume command ensures that the Attorney General is not unconstitutionally subordinated to a private party. Even Novartis seems to recognize that preserving the Attorney General's prosecutorial discretion is what's key. *See* Novartis Br. 43 ("[R]eceiving information about an action is not the same as 'exercis[ing] . . . judgment and discretion regarding the filing of a suit.'" (citing *Agey*, 172 S.W.2d at 974)).

Moreover, the additional protections that attach when the Attorney General decides not to lead the lawsuit—*e.g.*, the right to ongoing information, subsequent

23

intervention, a stay of discovery, and veto power over any settlement—preserve the Attorney General's ability to control the case as he sees fit.[7]

## III. This Case Does Not Warrant Mandamus Relief.

Novartis's novel request to invalidate a nearly thirty-year-old statutory scheme is particularly unsuited for mandamus relief. *See In re Rogers*, 690 S.W.3d 296, 302 (Tex. 2024) (orig. proceeding) (per curiam) ("Mandamus relief is an extraordinary remedy."). To obtain such relief, the relator must show that: (1) the trial court clearly abused its discretion; and (2) there is no adequate remedy by appeal. *In re Kappmeyer*, 668 S.W.3d 651, 654 (Tex. 2023) (orig. proceeding). Novartis fails on both counts.

First, for the reasons set forth above, the trial court rightly denied Novartis's motion to dismiss, thereby upholding the challenged provisions of the TMFPA and allowing HSG to maintain its claims. *Cf. City of Houston v. Hous. Prof'l Firefighters Ass'n*, 664 S.W.3d 790, 798 (Tex. 2023) ("A party challenging a statute as unconstitutional bears a *heavy burden* to overcome th[e] presumption [of constitutionality]." (emphasis added)). Far from carrying its heavy burden, Novartis failed to point to a single case even questioning the constitutionality of the Act. Indeed, the U.S. Supreme Court *rejected* many of the arguments Novartis advances here when it held that a *qui tam* relator had standing to vindicate the United States's injuries via the federal False Claims Act. *Stevens*, 529 U.S. at 774. It's quite a stretch to contend that

---

[7] Novartis's discussion of the TMFPA's "history" (or, rather, the lack thereof), Novartis Br. 44-47, is irrelevant given this Court's caselaw upholding statutes that authorize private persons to litigate on behalf of the State.

the trial court abused its discretion when it denied Novartis what would have amounted to unprecedented relief. *Cf. Kappmeyer*, 668 S.W.3d at 655 ("A trial court abuses its discretion when it acts with disregard of guiding rules or principles or in an arbitrary or unreasonable manner.").

Second, even assuming that the trial court erred, Novartis has an adequate remedy by appeal. As this Court has explained, "[a]bsent extraordinary circumstances…a denial of a motion to dismiss…is a ruling incident to the ordinary trial process which will *not* be corrected by mandamus." *Hooks v. Fourth Ct. of Appeals*, 808 S.W.2d 56, 59 (Tex. 1991) (orig. proceeding).

Beyond avoiding "cost-intensive discovery" incident to civil litigation, Novartis Br. 48, Novartis fails to explain why it should be entitled to bypass the ordinary appellate process in the underlying case. The "cost or delay of having to go through trial and the appellate process," however, "does *not* make the remedy at law inadequate." *Hooks*, 808 S.W.2d at 60. Otherwise, every denial of every motion to dismiss or plea to the jurisdiction would afford the defendant the right to mandamus. That would take the "extraordinary" out of the "extraordinary circumstances" warranting relief.

The cases Novartis cites (at 48) affording defendants mandamus relief when trial courts had failed to grant Rule 91a motions involved clearly settled caselaw that plainly foreclosed the plaintiffs' claims. *See In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 267-68 (Tex. 2021) (orig. proceeding) ("[O]ur precedent has consistently recognized a *Stowers* cause of action only when the insured's liability exceeds policy limits. Longoria's claim for Farmers' negligent failure to settle within

25

policy limits has no basis in law."); *In re Essex Ins. Co.*, 450 S.W.3d 524, 527 (Tex. 2014) (orig. proceeding) (per curiam) ("Texas law does not permit Zuniga to sue Essex directly for a declaration of Essex's duty to indemnify SDT before SDT's liability to Zuniga has been determined."); *cf. In re Shire PLC*, 633 S.W.3d 1, 27 (Tex. App.—Texarkana 2021, orig. proceeding) ("Shire is not entitled to mandamus relief in this case because the law it relies upon [for dismissal of relator's *qui tam* action] is clearly not settled by any standard."). In contrast here, this Court has entertained *qui tam* TMFPA actions much like HSG's without ever questioning the constitutionality of the Act. *See*, *e.g.*, *Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 716 (Tex. 2024). No caselaw forecloses (or even undermines) HSG's TMFPA claims.

## PRAYER

The Court should deny Novartis's petition for a writ of mandamus.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

AARON L. NIELSON
Solicitor General

BRENT WEBSTER
First Assistant Attorney General

/s/ Evan S. Greene
EVAN S. GREENE
Assistant Solicitor General
State Bar No. 24068742
Evan.Greene@oag.texas.gov

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for Real Party in Interest
the State of Texas

## CERTIFICATE OF COMPLIANCE

Microsoft Word reports that this document contains 7,561 words, excluding exempted text.

/s/ Evan Greene
EVAN GREENE

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below:

Alison Washburn on behalf of Evan Greene
Bar No. 24068742
alison.washburn@oag.texas.gov
Envelope ID: 94528158
Filing Code Description: Brief on the Merits (all briefs)
Filing Description: Brief on the Merits for Real Party in Interest the State of Texas
Status as of 11/20/2024 3:31 PM CST

Associated Case Party: Health Selection Group, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jonathan Wilkerson | 24050162 | jonathan.wilkerson@lanierlawfirm.com | 11/20/2024 3:27:15 PM | SENT |
| Samuel Baxter | 1938000 | sbaxter@mckoolsmith.com | 11/20/2024 3:27:15 PM | SENT |
| Zeke DeRose | 24057421 | zeke.derose@lanierlawfirm.com | 11/20/2024 3:27:15 PM | SENT |
| Jennifer Truelove | 24012906 | jtruelove@mckoolsmith.com | 11/20/2024 3:27:15 PM | SENT |
| Alex Brown | 24026964 | alex.brown@lanierlawfirm.com | 11/20/2024 3:27:15 PM | SENT |
| Michael Catapano | | mcatapano@mckoolsmith.com | 11/20/2024 3:27:15 PM | SENT |
| Angel Devine | | adevine@mckoolsmith.com | 11/20/2024 3:27:15 PM | SENT |
| Hannah Mirzoeff | | hmirzoeff@mckoolsmith.com | 11/20/2024 3:27:15 PM | SENT |
| joel leach | | jleach@mckoolsmith.com | 11/20/2024 3:27:15 PM | SENT |
| denise lopez | | dlopez@mckoolsmith.com | 11/20/2024 3:27:15 PM | SENT |
| Eric B.Halper | | ehalper@mckoolsmith.com | 11/20/2024 3:27:15 PM | SENT |
| Radu A.Lelutiu | | rlelutiu@mckoolsmith.com | 11/20/2024 3:27:15 PM | SENT |
| W. MarkLanier | | WML@LanierLawFirm.com | 11/20/2024 3:27:15 PM | SENT |

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lynne Kurtz-Citrin | 24081425 | lynne.kurtz-citrin@oag.texas.gov | 11/20/2024 3:27:15 PM | SENT |
| Jonathan Bonilla | 24073939 | Jonathan.Bonilla@oag.texas.gov | 11/20/2024 3:27:15 PM | SENT |
| Jordan Underhill | 24102586 | jordan.underhill@oag.texas.gov | 11/20/2024 3:27:15 PM | SENT |
| Evan Greene | | evan.greene@oag.texas.gov | 11/20/2024 3:27:15 PM | SENT |
| Mary JoToupin | | MaryJo.Toupin@oag.texas.gov | 11/20/2024 3:27:15 PM | SENT |
| Janice Garrett | | Janice.Garrett@oag.texas.gov | 11/20/2024 3:27:15 PM | SENT |

Associated Case Party: Novartis Pharmaceuticals Corporation

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below:

Alison Washburn on behalf of Evan Greene
Bar No. 24068742
alison.washburn@oag.texas.gov
Envelope ID: 94528158
Filing Code Description: Brief on the Merits (all briefs)
Filing Description: Brief on the Merits for Real Party in Interest the State of Texas
Status as of 11/20/2024 3:31 PM CST

Associated Case Party: Novartis Pharmaceuticals Corporation

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Meredith N.Garagiola | | mgaragiola@omm.com | 11/20/2024 3:27:15 PM | SENT |
| Danny S.Ashby | | dashby@omm.com | 11/20/2024 3:27:15 PM | SENT |
| Ross Galin | | rgalin@omm.com | 11/20/2024 3:27:15 PM | SENT |
| Anton Metlitsky | | ametlitsky@omm.com | 11/20/2024 3:27:15 PM | SENT |
| Deron R.Dacus | | ddacus@dacusfirm.com | 11/20/2024 3:27:15 PM | SENT |
| Joshua Goode | | jgoode@omm.com | 11/20/2024 3:27:15 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Alison Washburn | | alison.washburn@oag.texas.gov | 11/20/2024 3:27:15 PM | SENT |